UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| Lawyers' Committee for Civil Rights Under Law<br>1401 New York Avenue, NW, #400<br>Washington, DC 20005, | |
| and | COMPLAINT |
| National Women's Law Center<br>11 Dupont Circle, NW, #800<br>Washington, DC 20036, | Civ. No. 1:18-CV-645 |
| Plaintiffs, | |
| vs. | |
| Office of Management and Budget<br>725 17th Street, NW<br>Washington, DC 20503 | |
| Defendant. | |

For their Complaint against Defendant Office of Management and Budget ("OMB"), Plaintiffs the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") and the National Women's Law Center ("NWLC") state as follows:

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records related to OMB's sudden and largely unexplained decision to halt an initiative previously approved by OMB for the collection of pay data

from employers by the Equal Employment Opportunity Commission ("EEOC").  On September 21, 2017, the NWLC and the Lawyers' Committee submitted five FOIA requests for certain records related to OMB's abrupt decision, but after more than five months OMB has not produced a single document or provided any substantive response.  The Lawyers' Committee and NWLC seek declaratory, injunctive, and other appropriate relief with respect to OMB's failure to respond to their FOIA requests and unlawful withholding of records.

2. Women working full-time, year-round are typically paid 80 cents for every dollar paid to their male counterparts, and comparing women of color to white, non-Hispanic men, the pay gaps are generally even larger. Black women typically make only 63 cents, Native American women only 57 cents, and Latinas only 54 cents for every dollar paid to white, non-Hispanic men for full-time, year-round work. The wage gap is wider still for women who are immigrants.  Women are paid less than men in nearly every occupation.  Controlling for race, region, unionization status, education, experience, occupation, and industry still leaves 38 percent of the pay gap unexplained.

3. Men of color experience similar pay disparities compared to white, non-Hispanic men. For every dollar paid to white, non-Hispanic men, Black men are paid 72 cents and Latino men are paid 62 cents.

4. A dearth of comparative salary and wage information may contribute to the persistence of race and gender pay gaps, and limit attempts to remedy them.  As a result,

employees face significant obstacles in gathering the information that would indicate they have experienced pay discrimination, which undermines their ability to challenge such discrimination. The same absence of access to pay data hampers the ability of enforcement agencies such as the EEOC to identify those pay discrimination complaints that bear deeper investigation. Moreover, employers lack sufficient incentives to undertake their own analysis that could proactively correct pay disparities.

5. In 2010, the EEOC and other federal agencies began a robust administrative process to identify ways to improve enforcement of federal laws prohibiting pay discrimination. Over the next six years, the EEOC commissioned a National Academy of Sciences Study, performed its own pilot study, and organized a diverse work group composed of relevant stakeholders, among many other activities.

6. Certain employers have long been required by Title VII of the Civil Rights Act of 1964 ("Title VII") to make and keep records that are relevant to the determinations of whether unlawful employment practices have occurred. Since 1966, they also have been required by Title VII and implementing regulations to file EEO-1 reports with the EEOC. EEO-1 reports are annual compliance surveys in which employers submit employment data categorized by race/ethnicity, gender and job category. The EEOC and the Office of Federal Contract Compliance Programs ("OFCCP") use the data from the EEO-1 reports to support civil rights enforcement and to analyze demographic employment patterns.

7. Through the administrative process described above, the EEOC determined that including employee pay data in the EEO-1 report is necessary to fulfill its obligation to enforce Title VII and other anti-discrimination laws; and that the availability of such information would improve the EEOC's enforcement of federal laws prohibiting pay discrimination and would increase employers' voluntary compliance with these laws.

8. Accordingly, the EEOC voted on and approved revisions to the EEO-1 to add a requirement to report W-2 earnings data for employees by sex, race/ethnicity, and job category. On February 1, 2016, these revisions to the EEO-1 were published in the Federal Register for a 60-day notice and comment period as required by the Paperwork Reduction Act, 44 U.S.C. §§ 3501, *et seq.* ("PRA"). Over the next seven months, the EEOC held a public hearing, made changes to the revised EEO-1 to reduce employer burden in response to comments received, voted on and approved the revisions to the EEO-1, formally submitted its revisions to the EEO-1 to OMB for approval as required by the PRA, and sought 30 days of additional public comment.

9. OMB approved the revisions to the EEO-1 ("Revised EEO-1 Form") on or about September 29, 2016. On that same day, the EEOC announced that beginning in March 2018, private employers with 100 or more employees, including federal contractors and subcontractors, would be required to annually report confidential summary pay data in addition to employee demographic information by job category, to the EEOC through the Revised EEO-1 Form.

4

10.     In February and March 2017, corporate representatives from the Equal Employment Advisory Council (the "Advisory Council"), the U.S. Chamber of Commerce ("Chamber"), and the Business Roundtable petitioned the Administration, including OMB to review, reconsider, and revoke its prior approval of the Revised EEO-1 Form.

11.     In April 2017, the NWLC, joined by the Lawyers' Committee and approximately 90 other civil rights and women's rights organizations submitted an analysis opposing these petitions.  Thereafter, the NWLC made multiple requests that OMB representatives meet with equal pay stakeholders to share views regarding the Advisory Committee, Chamber, and Business Roundtable petitions.  OMB failed to respond to these requests to meet.

12.     On August 29, 2017, without any prior notice, Neomi Rao, the Administrator of OMB's Office of Information and Regulatory Affairs, issued a memorandum of fewer than 500 words that immediately stayed the effectiveness of these revisions to the EEO-1 (the "Rao Memorandum").  Administrator Rao provided virtually no explanation regarding the decision, with only seven sentences used to justify the abrupt shift from OMB's prior approval of the pay data collection less than one year earlier.  The Rao Memorandum largely parrots regulatory standards, without establishing a legal basis for its action. OMB's decision was made in secret and without inviting public comment, in contrast to the transparent, public, multi-year process utilized by the

EEOC to create a well-developed and reasoned revision of the EEO-1 to collect pay data.[1]

13.    By its own account, OMB did not provide the full basis for its stay in the Rao Memorandum. The Rao Memorandum states that OMB determined that the relevant circumstances related to the collection had changed and/or that the burden estimates provided by the EEOC at the time of original submission to OMB for approval were materially in error.  The Rao Memorandum identifies that fact that the EEOC had released data file specifications for employers to submit the data subsequent to OMB's approval of the data collection as an "example" of a change in circumstance and speculates that these specifications "may" have changed the EEOC's burden estimate. The Rao Memorandum does not identify any other examples of changes in circumstances and does not otherwise suggest any error in the EEOC's burden estimate.

14.    The Rao Memorandum further states, "Among other things, OMB is concerned that some aspects of the revised collection of information lack practical utility, are unnecessarily burdensome, and do not adequately address privacy and confidentiality

---

[1] On November 15, 2017,  NWLC, Democracy Forward, and the Labor Council for Latin American Advancement filed a lawsuit against OMB, John Michael (Mick) Mulvaney, Director of OMB, and Neomi Rao, Administrator of the Office of Information and Regulatory Affairs (OIRA), in their official capacities, and, in order to properly execute any remedy, EEOC, and Victoria A. Lipnic, Acting Chair of the EEOC, in her official capacity, for illegally staying the pay data collection in violation of the Administrative Procedure Act and the Paperwork Reduction Act. See Complaint, National Women's Law Center vs. Office of Management and Budget, Case 1:17-cv-02458 (D.D.C. filed November 15, 2017).

issues." However, it does not identify the aspects of the revised collection to which it refers or otherwise explain the basis for its conclusion that the Revised EEO-1 Form raises these issues.

## PARTIES

15. The Lawyers' Committee is a nonprofit, nonpartisan organization formed in 1963 at the request of President John F. Kennedy to enlist the private bar's leadership and resources in combating racial discrimination and the resulting inequality of opportunity. It is based in Washington, D.C.

16. The NWLC is a 45-year-old nonpartisan, nonprofit organization that advocates for the rights of women and girls at school, at work, at home, and in their communities. For decades, NWLC has worked to combat discrimination in the workplace, with a particular focus on achieving equal pay for women. It is based in Washington, D.C.

17. OMB is a federal agency that is a component of the Executive Office of the President. It is based in Washington, D.C.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

19. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PLAINTIFFS' FOIA REQUESTS

20. On September 21, 2017, the NWLC and the Lawyers' Committee submitted a series of requests to OMB pursuant to the Freedom of Information Act, seeking various records explaining the basis for OMB's decision to revoke its approval of the Revised EEO-1 Form and communications related to that decision.

21. In their first request, the NWLC and the Lawyers' Committee sought communications between OMB and the EEOC, relevant calendar entries, and other records related to requests that OMB revoke, reconsider, or stay approval of the Revised EEO-1 Form (the "EEOC FOIA Request"). A true and correct copy of the EEOC FOIA Request is attached hereto as Exhibit A.

22. In a second request, the NWLC and the Lawyers' Committee sought communications between the Advisory Council and OMB, relevant calendar entries, and other records related to requests that OMB revoke, reconsider, or stay approval of the Revised EEO-1 Form (the "Advisory Council FOIA Request"). A true and correct copy of the Advisory Council FOIA Request is attached hereto as Exhibit B.

23. In a third request, the NWLC and the Lawyers' Committee sought communications between the U.S. Chamber of Commerce (the "Chamber") and OMB, relevant calendar entries, and other records related to requests that OMB revoke, reconsider, or stay approval of the Revised EEO-1 Form (the "Chamber FOIA Request"). A true and correct copy of the Chamber FOIA Request is attached hereto as Exhibit C.

24. In a fourth request, the NWLC and the Lawyers' Committee sought communications between the Business Roundtable and OMB, relevant calendar entries, and other records related to requests that OMB revoke, reconsider, or stay approval of the Revised EEO-1 Form (the "Business Roundtable FOIA Request"). A true and correct copy of the Business Roundtable FOIA Request is attached hereto as Exhibit D.

25. In a fifth request, the NWLC and the Lawyers' Committee did not focus on any particular outside organization (the "Catchall FOIA Request"). Instead, in the Catchall FOIA Request they sought, among other things, communications discussing, describing, or referencing the subjects of revoking, rescinding, reconsidering, or staying approval of the Revised EEO-1 Form, documents related to OMB's consideration of requests to revoke, rescind, reconsider, or stay approval of the Revised EEO-1 Form or to OMB's decision to review and stay the Revised EEO-1 Form, relevant communications from individuals and organizations not encompassed in the other FOIA requests discussed above, and relevant calendar entries and other records. A true and correct copy of the Catchall FOIA Request is attached hereto as Exhibit E.

## PLAINTIFFS' FEE WAIVER REQUESTS

26. In each of the FOIA requests described above, the NWLC and the Lawyers' Committee included a fee waiver request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) as neither nonprofit organization is seeking the records for a commercial purpose, and disclosure is in the public interest as it is likely to contribute significantly to the public understanding of the operations and activities of the government.

27. Employees face significant obstacles in gathering the information that would indicate they have experienced pay discrimination, which undermines their ability to challenge such discrimination. Consequently, government enforcement and employer self-evaluation and self-correction are critical to combat compensation discrimination. The EEO-1 Form revisions were designed to facilitate both. The public is entitled to information surrounding the revocation of the approval of the Revised EEO-1 Form, because OMB's indefinite suspension prevents the EEOC and the OFCCP from collecting pay data to uncover, investigate, and rectify potential racial and gender pay gaps that would otherwise be difficult to uncover.

28. The NWLC and the Lawyers' Committee plan to use the records obtained from OMB, and their analyses of those records, to educate the public through reports, press releases, and other media. They will also make the materials available on their public websites and promote their availability through social media platforms.

**OMB'S FAILURE TO RESPOND**

29. In a series of emails dated September 21, 2017, OMB acknowledged receipt of the five FOIA requests described above and assigned them the following OMB FOIA numbers: 2017-449, 2017-450, 2017-451, 2017-452, and 2017-453.

30. On November 14, 2017, in a phone conversation with a representative of the NWLC, Dionne Hardy, an OMB FOIA officer, indicated that for FOIA requests 2017-449, 2017-450, 2017-451, and 2017-453, OMB had compiled documents. She

further indicated that for FOIA request 2017-452, no update was available and the documents had not yet been compiled. She was not able to provide a time frame or date estimate for receipt of documents responsive to any of the requests.

31.     Despite having compiled some of the responsive documents, OMB has not substantively responded to any of the FOIA requests submitted by the NWLC and the Lawyers' Committee, nor has it produced any documents.  It has not even provided a Vaughn index or otherwise asserted that it is withholding responsive documents based on a claimed FOIA exemption.  OMB's failure to provide documents fits within a broader trend.  In 2017, the government censored, withheld, or said it could not find records sought by FOIA requests more often than at any point in the last decade according to a recent Associated Press analysis.[2]

32.     OMB has also not responded to the NWLC and the Lawyers' Committee's fee waiver requests.

### COUNT I – VIOLATION OF FOIA FOR FAILURE TO RESPOND AND PRODUCE RESPONSIVE DOCUMENTS

33.     The NWLC and the Lawyers' Committee repeat, allege, and incorporate the allegations set forth above.

---

[2] Ted Bridis, *US sets new record for censoring, withholding gov't files*, Associated Press, Mar. 13, 2018, *available at* https://www.apnews.com/714791d91d7944e49a284a51fab65b85/US-sets-new-record-for-censoring,-withholding-gov't-files.

34. The NWLC and the Lawyers' Committee submitted the FOIA requests described above and attached hereto on September 21, 2017, and receipt of those requests was acknowledged by OMB.

35. OMB violated 5 U.S.C. § 552(a)(3) by failing to reasonably search for and then produce records sought in the FOIA requests submitted by the NWLC and the Lawyers' Committee.

36. OMB violated 5 U.S.C. § 552(a)(6)(A) by failing to timely respond to the FOIA requests submitted by the NWLC and the Lawyers' Committee.

37. The NWLC and the Lawyers' Committee are deemed to have exhausted their administrative remedies. See 5 U.S.C. § 552(a)(6)(C).

## COUNT II – VIOLATION OF FOIA FOR FAILURE TO GRANT PUBLIC INTEREST FEE WAIVER REQUEST

38. The NWLC and the Lawyers' Committee repeat, allege, and incorporate the allegations set forth above.

39. The NWLC and Lawyers' Committee submitted the FOIA requests described above and attached hereto on September 21, 2017, and each such request contained a request that OMB waive all associated fees because none of the requests were made for a commercial purpose and disclosure of the records sought would contribute significantly to public understanding of the operations and activities of the government.

40. The Lawyers' Committee and NWLC provided factual information supporting their fee waiver requests.

41. The Lawyers' Committee and NWLC are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and the regulations promulgated thereunder.

WHEREFORE, Plaintiffs NWLC and the Lawyers' Committee request that judgment be entered in its favor against Defendant OMB, and that the Court:

(a) Declare that OMB's failure to respond to Plaintiffs' FOIA requests within the statutory time limit and its failure to provide responsive records violate FOIA;

(b) Order OMB and any of its relevant departments, components, agents, employees or other persons acting by, through, for, or on behalf of it to conduct and/or complete a prompt, reasonable search for records responsive to Plaintiffs' FOIA requests, and to produce the records located by that search;

(c) Enjoin OMB and any of its relevant departments, components, agents, employees or other persons acting by, through, for, or on behalf of it from withholding records responsive to Plaintiffs' FOIA requests;

(d) Order OMB to waive the fees associated with Plaintiffs' FOIA requests;

(e) Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

(f)     Grant all other such relief to Plaintiffs as the Court deems just and equitable.

Dated: March 21, 2018

Respectfully submitted,

/s/ Emily J. Martin
Emily J. Martin (DC Bar No. 481051)
emartin@nwlc.org
Maya Raghu (DC Bar No. 1035558)
mraghu@nwlc.org

National Women's Law Center
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
(202) 588-5180

Daniel Goldberger (admitted in the State of New York, pro hac vice motion pending)
goldberger.dan@dorsey.com
Colin Wicker (admitted in the State of Minnesota, pro hac vice motion pending)
wicker.colin@dorsey.com
Sam Bolstad (admitted in the State of Minnesota, pro hac vice motion pending)
bolstad.sam@dorsey.com

Dorsey & Whitney LLP

51 West 52nd Street
New York, NY 10019-6119
(212) 415-9200

50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Jon Greenbaum (D.C. Bar No. 489887)
Dariely Rodriguez (D.C. Bar application pending)

Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW, Suite 400
Washington, D.C. 20005
(202) 662-8600