



Dionne Hardy
Office of Management and Budget
725 17th Street NW, Suite 9204
Washington, DC 20503
(202) 395-FOIA
OMBFOIA@omb.eop.gov

September 20, 2017

**RE: Freedom of Information Act Request**

Dear FOIA Officer:

This letter constitutes a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., submitted by the Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee") and the National Women's Law Center ("NWLC").

On August 29, 2017 the Office of Management and Budget's (OMB) Office of Information and Regulatory Affairs (OIRA) issued a memorandum to Acting Chair of the Equal Employment Opportunity Commission, Victoria Lipnic initiating a review and indefinite stay under the Paperwork Reduction Act (PRA) of the EEOC's pay data collection through its updated and previously approved EEO-1 form (Revised EEO-1 Form).[1]  The OMB attributed its determination to the EEOC's release of data file specifications after the approval of the Revised EEO-1 Form on September 29, 2016.  The OMB further stated that it was indefinitely suspending the pay data collection for good cause, because it found continued pay data to be contrary to PRA standards.

Through the Revised EEO-1 Form, the EEOC seeks to better identify and end pay discrimination harming people of color and women. There is an urgent need for this effort. Women working full time, year round are typically paid 80 cents for every dollar paid by their male counterparts. This gender pay gap translates into $10,086 less per year in median earnings for women, leaving women and their families shortchanged.  When we compare women of color to white, non-Hispanic men, the wage gaps are even larger.  Black women typically make only 63 cents, Latinas only 54 cents,  and Native women only 57 cents, for every dollar paid to white, non-Hispanic men. These pay gaps mean an annual loss of $21,698 for Black women, $26,403 for Latinas, and $24,007 for Native women.

These pay gaps are not explained away by women's job choices. Women are paid less than men in nearly every occupation,[2] and studies show that even controlling for race, region, unionization status, education, experience, occupation, and industry, 38 percent of the pay gap

---

[11] U.S. Office of Mgmt. and Budget, *Notice of Office of Management and Budget Action* (Sept. 29, 2016), *available at* https://www.reginfo.gov/public/do/DownloadNOA?requestID=275763.
[2] Hegewisch, A. & Matite, M., *The Gender Wage Gap by Occupation,* INST. FOR WOMEN'S POLICY RESEARCH (2013), *available at* http://www.iwpr.org/publications/pubs/the-gender-wage-gap-by-occupation-2

remains unexplained.[3] Biases and stereotypes drive these gaps. For example, a 2012 experiment revealed that compared to an identical female applicant, science professors offered a male applicant for a lab manager position a salary of nearly $4,000 more, as well as additional career mentoring, and judged him to be significantly more competent and hirable.[4] This dynamic repeats itself throughout the economy.

Men of color experience similar dynamics compared to white, non-Hispanic men.  For every dollar earned by White men, Black men earn 72 cents and Hispanic men earn 62 cents. Stereotypes and biases drive these gaps as well. For example, another recent study found that while black job-seekers negotiated at the same rate as white job-seekers, they were perceived to be "pushier," which resulted in lower starting salaries.[5]

The Lawyers' Committee and the NWLC seek records detailing the basis for the decision to revoke the approval of the Revised EEO-1 Form.  The Revised EEO-1 Form was adopted after an extensive and transparent process, including a public hearing, a vote by the EEOC Commissioners, and two rounds of notice and public comment.  The EEOC process itself grew out of and responded to a Department of Labor proposal to collect pay data that itself included multiple rounds of public comment. In short, the process invited and considered the participation of all stakeholders and was based on careful and thorough analysis.

In contrast, the OMB's decision to stay use of the Revised EEO-1 Form for pay data collection occurred in secret after receiving requests from corporate representatives the Equal Employment Advisory Council ("EEAC"), the U.S. Chamber of Commerce ("Chamber"), and the Business Roundtable, and after a refusal to respond to multiple requests from equal pay stakeholders requesting a meeting to share views regarding those requests.

## **Requested Records**

The Lawyers' Committee and the NWLC request that OMB produce the following within twenty business days:

- Communications relating to requests that OMB revoke, review, rescind, reconsider, or stay approval of the Revised EEO-1 Form between any OMB employee(s) and EEOC employees, including but not limited to anyone using an @eeoc.gov email address, including but not limited to:

  1. Victoria Lipnic, Acting Chair, EEOC
  2. Chai R. Feldblum, Commissioner, EEOC
  3. Jenny R. Yang, Commissioner, EEOC

---

[3] Blau, F. D. & Kahn, L.M, *The Gender Wage Gap: Extent, Trends and Explanations*, NAT'L BUREAU OF ECONOMIC RESEARCH (Jan. 2016), *available at* http://www.nber.org/papers/w21913.pdf.
[4] Moss-Racusin, C.A. et al., S*cience faculty's subtle gender biases favor male students*, PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCES OF THE UNITED STATES OF AMERICA (Aug. 2012), *available at* http://www.pnas.org/content/109/41/16474.abstract#aff-1.
[5] Hernandez, M. & Avery, D., *Getting the Short End of the Stick: Racial Bias in Salary Negotiations*, MIT Sloan Management Review (June 15, 2016), *available at* http://sloanreview.mit.edu/article/getting-the-short-end-of-the-stick-racial-bias-in-salary-negotiations/.

4. Charlotte A. Burrows, Commissioner, EEOC
5. James Paretti, Chief of Staff & Senior Counsel to Acting Chair Lipnic, EEOC
6. Donald McIntosh, Special Assistant to Acting Chair Lipnic, EEOC
7. Peggy Mastroianni, former Legal Counsel, EEOC

OMB should search for the above individuals both using keyword searching with the body of records and as an entry in the to/from/cc/bcc fields of emails or calendar entries.

- Calendar entries (including invitations) and/or records relating to requests to revoke, review, rescind,  reconsider, or stay approval of the Revised EEO-1 Form and involving any participant or invitee representing the EEOC, including but not limited to any participant or invitee with an @eeoc.gov email address (and all attachments to such calendar entries) for any OMB employees, including but not limited to:

1. John Mulvaney, Director, OMB
2. Kan Wang, Program Examiner, Labor Branch, OMB
3. Neomi Rao, Administrator, Office of Information and Regulatory Affairs, OMB
4. Dominic Mancini, former Acting Administrator, Office of Information and Regulatory Affairs, OMB
5. Lisa Jones, Scheduler, OMB
6. Anyone acting on behalf of any of the individuals listed above (such as administrative assistants or chiefs of staff)
7.

For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars – we request the production of any calendar – paper or electronic, whether on government-issued or personal devices – used to track or coordinate how these individuals allocate their time on agency business.

The search should include any individuals serving in the roles listed above in either an acting or a permanent capacity.

Please provide all responsive records from January 20, 2017, to the date the search is conducted.

In addition to the records requested above, the Lawyers' Committee and the NWLC also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request.  If OMB uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The Lawyers' Committee and the NWLC seek all responsive records regardless of format, medium or physical characteristics.  In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed or audio material of any kind.  We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voicemail messages and transcripts, notes or minutes of any meetings, telephone conversations or discussions.  Our request includes any attachments to these records. No category of material should be omitted from search, collection and production.

Please search all records regarding agency business.  You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.  Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[6]  It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; the Lawyers' Committee and the NWLC have a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.[7]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information.  In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.[8] Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but OMB's archiving tools would capture that email under Capstone.  Accordingly, the Lawyers' Committee and the NWLC insist that OMB use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched.  The Lawyers' Committee and the NWLC are available to work with you to craft appropriate search terms.  However,

---

[6] *See Competitive Enter. Inst. V. Office of Sci. & Tech. Policy,* 827 F.3d 145, 149-50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry,* 844 F.3d 952, 955-56 (D.C. Cir. 2016).

[7] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[8] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidentialmemorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[9] If it is your position that any portion of the requested records is exempt from disclosure, the Lawyers' Committee and the NWLC request that you provide an index of those documents as required under *Vaughn v. Rosen*.[10] As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[11] Moreover, the Vaughn index "must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information."[12] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[13]

In the even some portions of the requested records are properly exempt from disclosure, please disclose any reasonable segregable non-exempt portions of the requested records.  If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[14]  Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index.  If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

You should institute a preservation hold on information responsive to this request.  The Lawyers' Committee and the NWLC intend to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary.  Accordingly, OMB is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, the Lawyers' Committee and the NWLC welcome an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs.  By working together at the outset, we can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email to ombfoia@nwlc.org or in PDF format on a USB drive.  Please send any responsive material being sent by mail to Emily Martin; National Women's Law Center; 11 Dupont Circle, NW,

---

[9] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).
[10] 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).
[11] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).
[12] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223—24 (D.C. Cir. 1987) (emphasis in original).
[13] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).
[14] *Mead Data Central*, 556 F.2d at 261.

Suite 800; Washington, DC 20036. If it will accelerate release of responsive records, please also provide responsive material on a rolling basis.

## Fee Waiver Request

The Lawyers' Committee and the NWLC request that all fees in connection with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii) because neither seeks the records for a commercial purpose and disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government.[15]

The Lawyers' Committee and the NWLC request a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding" of government operations and activities.[16]  When employees are paid less because of their sex, race, or ethnicity, they often have no idea they are being discriminated against. Discriminatory employer pay decisions are often cloaked in secrecy, and seldom are as obvious to affected employees as are discriminatory demotions, terminations, or denials of promotions.  Employees face significant obstacles in gathering the information that would indicate they have experienced pay discrimination, which undermines their ability to challenge such discrimination. Consequently, government enforcement and employer self-evaluation and self-correction are critical to combat compensation discrimination. The EEO-1 Form revisions were properly designed to facilitate both.  The public is entitled to information surrounding the revocation of the approval of the Revised EEO-1 Form because indefinite suspension of the collection prevents the EEOC from collecting pay data to uncover, investigate, and rectify potential hidden racial and gender pay gaps.

The Lawyers' Committee and the NWLC are both 501(c)(3) nonprofit organizations and do not have a commercial purpose, and the release of the information requested is not in the Lawyers' Committee's or NWLC's financial interest. The Lawyers' Committee was founded in 1963 and is committed to full and fair enforcement of federal civil rights laws and ensuring equal justice under law for all. Economic justice and employment discrimination are core programmatic areas of the Lawyers' Committee, and the organization has had a longstanding commitment to fighting for equal employment opportunity. NWLC has worked for 45 years to advance and protect women's equality and opportunity—with a focus on women's employment, education, income security, health, and reproductive rights—and has long sought to remove barriers to equal treatment of women in the workplace, particularly those that suppress women's wages.

The Lawyers' Committee and the NWLC will use the information gathered, and their analysis of it, to educate the public through reports, press releases, or other media. The Lawyers' Committee and the NWLC will also make materials it gathers available on its public website and promote their availability on social media platforms, such as Facebook and Twitter.

---

[15] 28 C.F.R. § 16.10(k)(1).
[16] 28 C.F.R. § 16.10(k)(1), (2)(i)-(ii).

Accordingly, the Lawyers' Committee and the NWLC, individually and collectively, qualify for a fee waiver. If a waiver is not granted, then please advise us of the amount of any proposed search and reproduction charges before those activities are carried out.

We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

## Application for Expedited Records

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 5 C.F.R. § 1303.10(d)(1)(iv).

We certify to be true and correct to the best of our knowledge and belief that expedited processing is warranted because there is a compelling need to inform the public about, and there are questions regarding, the validity of OMB's rationale for suspending the EEOC's pay data collection, the process by which it arrived at its determination, and the impact the indefinite delay will have on individuals impacted by pay disparities, including women, minorities and the families of those affected by pay disparities.  There is strong reason to believe that OMB is, and has been, coordinating with some or all of the individuals identified in this request since the change in Administrations. Whether the OMB is undertaking efforts that could affect the EEOC's progress towards tackling and ending pay discrimination is "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."[17]

Accordingly, the Lawyers' Committee and the NWLC qualify for expedited processing under the statute.

## Conclusion

We share a common mission to promote transparency in government.  The Lawyers' Committee and the NWLC look forward to working with OMB on this request.  If you do not understand any part of this request, have any questions, or foresee any problems in fully complying with this request, please contact Emily Martin, General Counsel and Vice President for Workplace Justice at the NWLC at ombfoia@nwlc.org.

---

[17] 5 C.F.R. 1303.10(d)(1)(iv).

Thank you very much for your attention to this matter.


Sincerely,


Kristen Clarke                          Fatima Goss Graves
President and Executive Director        President and CEO
The Lawyers' Committee for              The National Women's Law Center
Civil Rights Under Law