# Exhibit A

# Re: Meeting: EEO-1 Discussion

| | |
|---|---|
| **From:** | JIM PARETTI  Ex 6 - (5 U.S.C. Sec 552(b)(6)) |
| **To:** | "Mulvaney, Mick M. EOP/OMB" Ex 6 - (5 U.S.C. Sec 552(b)(6)) |
| **Date:** | Thu, 20 Apr 2017 16:20:25 -0400 |

Kailey, Chair Lipnic is scheduled to be giving a speech in Philadelphia at this time on Thursday morning.  Is there any possibility this meeting can happen on Friday - her schedule is wide open.  Please advise.

**From:** Kailey.M.Pickitt@omb.eop.gov <Kailey.M.Pickitt@omb.eop.gov> on behalf of Mulvaney, Mick M. EOP/OMB Ex 6 - (5 U.S.C. Sec 552(b)(6))
**Sent:** Thursday, April 20, 2017 2:43:26 PM
**To:** Baitel, Rachael EOP/WHO; Radford, Julie T. EOP/WHO; Doyle, Emma K. EOP/OMB; McKee, Kara L. EOP/WHO; JIM PARETTI; Campau, Anthony P. EOP/OMB
**Subject:** Meeting: EEO-1 Discussion
**When:** Thursday, April 27, 2017 9:00 AM-10:00 AM.
**Where:** Roosevelt Room

**Updated meeting description and date/time:**
**This meeting will now take place on Thursday, April 27th at 9 AM. The purpose is to discuss an EEOC form that requires employers to provide certain wage data.**
All —
Director Mulvaney will be hosting a meeting to discuss EEO-1 on Wednesday, April 26th at 1:00 PM in the Roosevelt Room.
<u>Invited Participants</u>
Ivanka Trump
Julie Radford
Kara McKee, DPC
Victoria Lipnic, EEOC
Jim Paretti, EEOC
Emma Doyle, OMB
Anthony Campau, OMB
No +1s.
Please let me know if you have any questions.
Best,
Kailey
Kailey Pickitt
Executive Assistant to the Director
Office of Management and Budget
<u>Kailey.M.Pickitt@omb.eop.gov</u>
(202) 456-2937 (direct)

OMB-Lawyers' Committee-000018

# Exhibit B

# Re: Meeting: EEO-1 Discussion

**From:**     JIM PARETTI <Ex 6 - (5 U.S.C. Sec>

**To:**       "Mulvaney, Mick M. EOP/OMB" <Ex 6 - (5 U.S.C. Sec 552(b)(6)) >

**Date:**     Thu, 20 Apr 2017 16:20:25 -0400

Kailey, Chair Lipnic is scheduled to be giving a speech in Philadelphia at this time on Thursday morning.  Is there any possibility this meeting can happen on Friday - her schedule is wide open.  Please advise.



Ex 5 DP- (5 U.S.C. Sec 552(b)(5))

OMB-Lawyer's Committee-000199

Exhibit C



**Department of Sociology**
**200 Hicks Way**
**University of Massachusetts-Amherst**
**Amherst-MA 01003-9277**



**Office: (413)-545-4070**
**Fax: (413)-545-3204**

TO:       John M. Mulvaney, Director, Office of Management and Budget, 725 17th Street
          NW, Washington, D.C. 20503; Ex 6 - (5 U.S.C. Sec 552(b)(6))

FROM:     Donald Tomaskovic-Devey, Professor of Sociology and Director of the Center for
          Employment Equity, University of Massachusetts, Amherst:
          tomaskovic-devey@soc.umass.edu

CC:       Victoria Lipnic, Acting Chair of the U.S. Equal Employment Opportunity
          Commission, U.S. Equal Employment Opportunity Commission, 131 M Street,
          NE, Washington, DC 20507, Victoria.Lipnic@eeoc.gov; EEOC Commissioners
          Jenny.Yang@eeoc.gov, Chai.Feldblum@ eeoc.gov, & Charlotte.Burrows@eeoc.gov


RE:       Utility of EEOC Pay Data Collection

DATE:     6-6-2017

It has come to my attention that some parties have questioned the utility of the currently approved plans
for the EEOC to begin collecting pay data from medium and large private sector employers.  As a
person with deep experience using EEOC data and broad knowledge of the regulatory process I would
like to point out the utility of these data for public policy, citizen knowledge, and enforcement.

1.  The 1964 Civil Rights Act charged the EEOC with monitoring equal employment opportunity
    progress in the private sector. In 1966 the EEOC began collecting the current EEO-1 private
    sector reports. Workplace and firm level private sector pay data have never been available to
    support the EEOC's statutory charge to monitor progress, despite the obvious relevance of pay
    disparities to this goal.

2.  Citizens would be well served by data that allows the calculation of actual workplace pay
    disparity trends and that makes visible variation among employers in gender and racial pay
    disparities. The national goal to eliminate racial and gender employment discrimination requires
    earnings data, both to document progress and identify bottlenecks in our march toward a more
    equal opportunity society.

3.  The 1964 Civil Rights Act also charged the EEOC with identifying best practices in moving
    toward equal opportunity in employment. These types of causal studies have been undertaken by
    academics with access to EEO-1 reports. All of the past research has focused on employment
    levels, segregation or access to specific broad occupations. Compared to earnings, the EEO-1
    occupational categories are a crude tool for assessing progress across the entire national

economy. The advent of pay data collection will allow researchers to identify the degree to which pay disparities arise from segregation between firms, occupational segregation within firms, and pay disparities within occupations.

4. Clearly we know that there are stubbornly large gender and racial earnings gaps in the U.S. We also know that there is discrimination in hiring, firing, and compensation practices. But to challenge discrimination we need to know where it is occurring and this cannot be done without pay and employment data linked to workplaces.

5. Current data collection, because it ignores firm variation in pay disparities can produce the misleading impression that all firms are the same in their EEO practices and outcomes. The truth is much more likely to be that some firms, industries and communities are becoming more equitable while others are getting worse.[1] The lack of firm or workplace level estimates of earnings disparities effectively makes firm variation in the size of gender and racial pay gaps invisible to both regulators and the public.

6. Current estimates of the pay gap blur the source of the gender and racial pay gaps, lumping together the within and between firm sources of the pay gaps. The former point towards problems of hiring discrimination and the latter to pay discrimination post-hire.

7. As a result, current pay gap statistics may overstate the role of employer disparate treatment in producing national gender and racial earnings gaps and trends, while understating the role of hiring discrimination, residential segregation and self-selection. Not being able to get these statistics right means that public policies aimed at reducing gender or racial earnings disparities lack clear policy relevant metrics.

8. The EEOC currently uses EEO-1 employment counts as part of its routine enforcement efforts. When investigating discrimination complaints EEOC staff can consult employment counts compared to workplaces in the same industry and local labor markets. These data allow them to distinguish between complaints that are likely to be limited to the person filing the complaint and workplace level disparity patterns. The addition of the pay data to routine reporting would provide the same functionality in distinguishing between individual complaints and larger workplace issues.

9. Importantly, the collection of pay data will allow the EEOC and OFCCP to establish baseline levels of pay inequality as part of complaint investigations and compliance reviews. This should reduce the exposure of many firms to exaggerated discrimination claims or intrusive compliance reviews. While pay data will not make either discrimination claims or compliance reviews go away, they should make both more efficient in the use of EEOC, OFCCP and firm resources.

10. The availability of pay data could aid the EEOC in deciding where to focus its investigative resources by eliminating from consideration firms with low or no pay disparities before case selection. While the proposed pay data collection is not sufficient to establish pay disparity under the Equal Pay Act, it could certainly be used to identify firms where no pay disparities are visible.

---

[1] I have no direct evidence for this assertion based on pay (since no firm level data exist yet) but there is substantial evidence to this effect on employment trends based on the EEO-1 employment data in my 2012 monograph (Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation).

OMB-Lawyer's Committee-000144

11. Pay data, like the employment data already collected by the EEOC, has the potential to identify firms with suspicious employment and pay practices. Employment data has been collected by the EEOC for the last 51 years and has not led to egregious targeting of corporate America. It seems unlikely that pay data would. Both the EEOC and OFCCP select cases on other bases and are aware that the criteria for concluding that discrimination is present are substantially higher than afforded by either simple employment counts or pay disparities.

12. OFCCP reviews, since they are neutrally selected to begin with, might become less intense for many firms, since some pay data could be analyzed by OFCCP staff prior to the compliance review reducing or even eliminating the need for firms to produce payroll data as part of compliance reviews.

**Conclusions**

Pay data collection will allow the EEOC to better monitor progress toward equal opportunity as mandated by the 1964 Civil Rights Act. Pay data will also allow researchers to investigate best practices in challenging racial and gender bias within firms. The planned pay data collection will improve the regulatory efficiency of the EEOC and OFCCP and should reduce the number of firms at risk for systemic investigations and full compliance reviews. Importantly, these data have the potential to move the national conversation on pay disparities away from vague accusations of discrimination aimed at all employers, to one that highlights the variation in equal employment opportunity progress among employers.

Finally, I have seen some recent statements suggesting that the collection of pay data by the EEOC produces some risk of disclosure of privileged firm information. The 1964 Civil Rights Act expressly forbids such disclosure and in the 51 years since these data collections began to my knowledge neither the EEOC or academic researchers detailed to the EEOC via Intergovernmental Personnel Act appointments have breached this confidentiality restriction.

**Biographical Statement**

Donald Tomaskovic-Devey, Professor of Sociology at the University of Massachusetts, Amherst, is the founding director of the Center for Employment Equity. He has been studying gender and racial employment segregation and pay gaps since the early 1980s. He has worked with EEO-1 reports since 2000 and has both consulted with and testified before the EEOC on the role of data collection and analysis in enforcement activity. He has also testified as an expert witness in a number of high profile class action discrimination lawsuits. His research on employment disparities has been funded by the U.S. Department of Labor, the National Science Foundation, the Russell Sage Foundation, and the W.K. Kellogg Foundation.

Representative publications include:

Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation.

Donald Tomaskovic-Devey, *Gender and Racial Inequality at Work: The Sources and Consequences of Job Segregation*. Ithaca, NY: ILR Press, 1993.

Anja-Kristin Abendroth, Silvia Maja Melzer, Alexandra Kalev, Donald Tomaskovic-Devey. 2017. "Women at Work: Women's Access to Power and the Gender Earnings Gap." *Industrial and Labor Relations Review*. 70:190-222.

OMB-Lawyer's Committee-000145

Donald Tomaskovic-Devey, Karen Brummond, Joo-Hee Han, Skylar Davidson. 2016. Private Sector Industry Disparities: A Report on Evidence of Systemic Disparities for Women, African Americans, Hispanics, Asians and Native Americans, EEODataNet.

Donald Tomaskovic-Devey, Martin Hällsten, and Dustin Avent-Holt. 2015. "Where do Immigrants Fare Worse? Modeling Workplace Wage Gap Variation with Longitudinal Employer-Employee Data." *American Journal of Sociology*. 120:1095-1143.

Dustin Avent-Holt and Donald Tomaskovic-Devey, 2012. **"**Relational Inequality: Gender Earnings Inequality in US and Japanese Manufacturing Plants in the Early 1980s." *Social Forces*. 91: 157-180.

Fidan Kurtulus and Donald Tomaskovic-Devey, 2012. **"**Do Female Top Managers Help Women to Advance? A Panel Study Using EEO-1 Records" *Annals of the American Academy of Political and Social Science*. 639: 173:197.

Kevin Stainback and Donald Tomaskovic-Devey, 2009. "Intersections of Power and Privilege: Long-Term Trends in Managerial Representation." *American Sociological Review*. 74:800-820.

McTague, Tricia, Kevin Stainback, and Donald Tomaskovic-Devey, 2009. "Organizational Response to Institutional Pressures for Equal Employment Opportunity since the Civil Rights Act of 1964." *Social Forces*. 87:1499-1527.

Donald Tomaskovic-Devey and Kevin Stainback. 2007. "Discrimination and Desegregation: Equal Opportunity Progress in U.S. Private Sector Workplaces Since the Civil Rights Act. *The Annals of the American Academy of Political and Social Science.* 609:49-84.

Donald Tomaskovic-Devey, Catherine Zimmer, Kevin Stainback, Corre Robinson, Tiffany Taylor, and Tricia McTague, 2006. "Documenting Desegregation: Segregation in American Workplaces by Race, Ethnicity, and Sex 1966-2000." *American Sociological Review*. 71:565-588.

Kevin Stainback, Corre Robinson, Donald Tomaskovic-Devey, 2005. "Race and Workplace Integration: A Politically Mediated Process?" *American Behavioral Scientist*. 48:1200-1229.

Corre L. Robinson, Tiffany Taylor, Donald Tomaskovic-Devey, Cathy Zimmer, and Matthew Irvin, 2005. "Studying Race and Sex Segregation at the Establishment-Level: Methodological Concerns and Substantive Opportunities in the Use of EEO-1 Data." *Work & Occupations*. 32:5-38.

Donald Tomaskovic-Devey and Sheryl Skaggs, 2002 "Sex Segregation, Labor Process Organization and Gender Earnings Inequality." *American Journal of Sociology*. 108:102-128.

Donald Tomaskovic-Devey and Sheryl Skaggs, "Workplace Gender and Racial Composition and Productivity: An Establishment Level Test of the Statistical Discrimination Hypothesis." *Work & Occupations*. 26:422-445. 1999.

Donald Tomaskovic-Devey, *Race, Ethnic and Gender Earnings Inequality: The Sources and Consequences of Employment Segregation*. Report to the Glass Ceiling Commission, U.S. Department of Labor, 1994.

Donald Tomaskovic-Devey, "The Gender and Race Composition of Jobs and the Male/Female, White/Black Pay Gaps." *Social Forces*. 92:45-76, 1993.

OMB-Lawyer's Committee-000146



**Department of Sociology**
**200 Hicks Way**
**University of Massachusetts-Amherst**
**Amherst-MA 01003-9277**



**Office: (413)-545-4070**
**Fax: (413)-545-3204**

TO:      John M. Mulvaney, Director, Office of Management and Budget, 725 17th Street
         NW, Washington, D.C. 20503; Ex 6 - (5 U.S.C. Sec 552(b)(6))

FROM:    Donald Tomaskovic-Devey, Professor of Sociology and Director of the Center for
         Employment Equity, University of Massachusetts, Amherst:
         tomaskovic-devey@soc.umass.edu

CC:      Victoria Lipnic, Acting Chair of the U.S. Equal Employment Opportunity
         Commission, U.S. Equal Employment Opportunity Commission, 131 M Street,
         NE, Washington, DC 20507, Victoria.Lipnic@eeoc.gov; EEOC Commissioners
         Jenny.Yang@eeoc.gov, Chai.Feldblum@ eeoc.gov, & Charlotte.Burrows@eeoc.gov


RE:      Utility of EEOC Pay Data Collection

DATE:    6-6-2017

It has come to my attention that some parties have questioned the utility of the currently approved plans
for the EEOC to begin collecting pay data from medium and large private sector employers.  As a
person with deep experience using EEOC data and broad knowledge of the regulatory process I would
like to point out the utility of these data for public policy, citizen knowledge, and enforcement.

1. The 1964 Civil Rights Act charged the EEOC with monitoring equal employment opportunity
   progress in the private sector. In 1966 the EEOC began collecting the current EEO-1 private
   sector reports. Workplace and firm level private sector pay data have never been available to
   support the EEOC's statutory charge to monitor progress, despite the obvious relevance of pay
   disparities to this goal.

2. Citizens would be well served by data that allows the calculation of actual workplace pay
   disparity trends and that makes visible variation among employers in gender and racial pay
   disparities. The national goal to eliminate racial and gender employment discrimination requires
   earnings data, both to document progress and identify bottlenecks in our march toward a more
   equal opportunity society.

3. The 1964 Civil Rights Act also charged the EEOC with identifying best practices in moving
   toward equal opportunity in employment. These types of causal studies have been undertaken by
   academics with access to EEO-1 reports. All of the past research has focused on employment
   levels, segregation or access to specific broad occupations. Compared to earnings, the EEO-1
   occupational categories are a crude tool for assessing progress across the entire national

economy. The advent of pay data collection will allow researchers to identify the degree to which pay disparities arise from segregation between firms, occupational segregation within firms, and pay disparities within occupations.

4. Clearly we know that there are stubbornly large gender and racial earnings gaps in the U.S. We also know that there is discrimination in hiring, firing, and compensation practices. But to challenge discrimination we need to know where it is occurring and this cannot be done without pay and employment data linked to workplaces.

5. Current data collection, because it ignores firm variation in pay disparities can produce the misleading impression that all firms are the same in their EEO practices and outcomes. The truth is much more likely to be that some firms, industries and communities are becoming more equitable while others are getting worse.[1] The lack of firm or workplace level estimates of earnings disparities effectively makes firm variation in the size of gender and racial pay gaps invisible to both regulators and the public.

6. Current estimates of the pay gap blur the source of the gender and racial pay gaps, lumping together the within and between firm sources of the pay gaps. The former point towards problems of hiring discrimination and the latter to pay discrimination post-hire.

7. As a result, current pay gap statistics may overstate the role of employer disparate treatment in producing national gender and racial earnings gaps and trends, while understating the role of hiring discrimination, residential segregation and self-selection. Not being able to get these statistics right means that public policies aimed at reducing gender or racial earnings disparities lack clear policy relevant metrics.

8. The EEOC currently uses EEO-1 employment counts as part of its routine enforcement efforts. When investigating discrimination complaints EEOC staff can consult employment counts compared to workplaces in the same industry and local labor markets. These data allow them to distinguish between complaints that are likely to be limited to the person filing the complaint and workplace level disparity patterns. The addition of the pay data to routine reporting would provide the same functionality in distinguishing between individual complaints and larger workplace issues.

9. Importantly, the collection of pay data will allow the EEOC and OFCCP to establish baseline levels of pay inequality as part of complaint investigations and compliance reviews. This should reduce the exposure of many firms to exaggerated discrimination claims or intrusive compliance reviews. While pay data will not make either discrimination claims or compliance reviews go away, they should make both more efficient in the use of EEOC, OFCCP and firm resources.

10. The availability of pay data could aid the EEOC in deciding where to focus its investigative resources by eliminating from consideration firms with low or no pay disparities before case selection. While the proposed pay data collection is not sufficient to establish pay disparity under the Equal Pay Act, it could certainly be used to identify firms where no pay disparities are visible.

---

[1] I have no direct evidence for this assertion based on pay (since no firm level data exist yet) but there is substantial evidence to this effect on employment trends based on the EEO-1 employment data in my 2012 monograph (Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation).

OMB-Lawyer's Committee-000148

**11.** Pay data, like the employment data already collected by the EEOC, has the potential to identify firms with suspicious employment and pay practices. Employment data has been collected by the EEOC for the last 51 years and has not led to egregious targeting of corporate America. It seems unlikely that pay data would. Both the EEOC and OFCCP select cases on other bases and are aware that the criteria for concluding that discrimination is present are substantially higher than afforded by either simple employment counts or pay disparities.

**12.** OFCCP reviews, since they are neutrally selected to begin with, might become less intense for many firms, since some pay data could be analyzed by OFCCP staff prior to the compliance review reducing or even eliminating the need for firms to produce payroll data as part of compliance reviews.

**Conclusions**

Pay data collection will allow the EEOC to better monitor progress toward equal opportunity as mandated by the 1964 Civil Rights Act. Pay data will also allow researchers to investigate best practices in challenging racial and gender bias within firms. The planned pay data collection will improve the regulatory efficiency of the EEOC and OFCCP and should reduce the number of firms at risk for systemic investigations and full compliance reviews. Importantly, these data have the potential to move the national conversation on pay disparities away from vague accusations of discrimination aimed at all employers, to one that highlights the variation in equal employment opportunity progress among employers.

Finally, I have seen some recent statements suggesting that the collection of pay data by the EEOC produces some risk of disclosure of privileged firm information. The 1964 Civil Rights Act expressly forbids such disclosure and in the 51 years since these data collections began to my knowledge neither the EEOC or academic researchers detailed to the EEOC via Intergovernmental Personnel Act appointments have breached this confidentiality restriction.

**Biographical Statement**

Donald Tomaskovic-Devey, Professor of Sociology at the University of Massachusetts, Amherst, is the founding director of the Center for Employment Equity. He has been studying gender and racial employment segregation and pay gaps since the early 1980s. He has worked with EEO-1 reports since 2000 and has both consulted with and testified before the EEOC on the role of data collection and analysis in enforcement activity. He has also testified as an expert witness in a number of high profile class action discrimination lawsuits. His research on employment disparities has been funded by the U.S. Department of Labor, the National Science Foundation, the Russell Sage Foundation, and the W.K. Kellogg Foundation.

Representative publications include:

Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation.

Donald Tomaskovic-Devey, *Gender and Racial Inequality at Work: The Sources and Consequences of Job Segregation*. Ithaca, NY: ILR Press, 1993.

Anja-Kristin Abendroth, Silvia Maja Melzer, Alexandra Kalev, Donald Tomaskovic-Devey. 2017. "Women at Work: Women's Access to Power and the Gender Earnings Gap." *Industrial and Labor Relations Review*. 70:190-222.

OMB-Lawyer's Committee-000149

Donald Tomaskovic-Devey, Karen Brummond, Joo-Hee Han, Skylar Davidson. 2016. Private Sector Industry Disparities: A Report on Evidence of Systemic Disparities for Women, African Americans, Hispanics, Asians and Native Americans, EEODataNet.

Donald Tomaskovic-Devey, Martin Hällsten, and Dustin Avent-Holt. 2015. "Where do Immigrants Fare Worse? Modeling Workplace Wage Gap Variation with Longitudinal Employer-Employee Data." *American Journal of Sociology*. 120:1095-1143.

Dustin Avent-Holt and Donald Tomaskovic-Devey, 2012. **"**Relational Inequality: Gender Earnings Inequality in US and Japanese Manufacturing Plants in the Early 1980s." *Social Forces*. 91: 157-180.

Fidan Kurtulus and Donald Tomaskovic-Devey, 2012. **"**Do Female Top Managers Help Women to Advance? A Panel Study Using EEO-1 Records" *Annals of the American Academy of Political and Social Science*. 639: 173:197.

Kevin Stainback and Donald Tomaskovic-Devey, 2009. "Intersections of Power and Privilege: Long-Term Trends in Managerial Representation." *American Sociological Review.* 74:800-820.

McTague, Tricia, Kevin Stainback, and Donald Tomaskovic-Devey, 2009. "Organizational Response to Institutional Pressures for Equal Employment Opportunity since the Civil Rights Act of 1964." *Social Forces*. 87:1499-1527.

Donald Tomaskovic-Devey and Kevin Stainback. 2007. "Discrimination and Desegregation: Equal Opportunity Progress in U.S. Private Sector Workplaces Since the Civil Rights Act. *The Annals of the American Academy of Political and Social Science.* 609:49-84.

Donald Tomaskovic-Devey, Catherine Zimmer, Kevin Stainback, Corre Robinson, Tiffany Taylor, and Tricia McTague, 2006. "Documenting Desegregation: Segregation in American Workplaces by Race, Ethnicity, and Sex 1966-2000." *American Sociological Review.* 71:565-588.

Kevin Stainback, Corre Robinson, Donald Tomaskovic-Devey, 2005. "Race and Workplace Integration: A Politically Mediated Process?" *American Behavioral Scientist.* 48:1200-1229.

Corre L. Robinson, Tiffany Taylor, Donald Tomaskovic-Devey, Cathy Zimmer, and Matthew Irvin, 2005. "Studying Race and Sex Segregation at the Establishment-Level: Methodological Concerns and Substantive Opportunities in the Use of EEO-1 Data." *Work & Occupations*. 32:5-38.

Donald Tomaskovic-Devey and Sheryl Skaggs, 2002 "Sex Segregation, Labor Process Organization and Gender Earnings Inequality." *American Journal of Sociology.* 108:102-128.

Donald Tomaskovic-Devey and Sheryl Skaggs, "Workplace Gender and Racial Composition and Productivity: An Establishment Level Test of the Statistical Discrimination Hypothesis." *Work & Occupations*. 26:422-445. 1999.

Donald Tomaskovic-Devey, *Race, Ethnic and Gender Earnings Inequality: The Sources and Consequences of Employment Segregation*. Report to the Glass Ceiling Commission, U.S. Department of Labor, 1994.

Donald Tomaskovic-Devey, "The Gender and Race Composition of Jobs and the Male/Female, White/Black Pay Gaps." *Social Forces*. 92:45-76, 1993.

OMB-Lawyer's Committee-000150



**Department of Sociology**
**200 Hicks Way**
**University of Massachusetts-Amherst**
**Amherst-MA 01003-9277**



**Office: (413)-545-4070**
**Fax: (413)-545-3204**

TO:      John M. Mulvaney, Director, Office of Management and Budget, 725 17th Street
         NW, Washington, D.C. 20503; ▉Ex 6 - (5 U.S.C. Sec 552(b)(6))▉

FROM:    Donald Tomaskovic-Devey, Professor of Sociology and Director of the Center for
         Employment Equity, University of Massachusetts, Amherst:
         tomaskovic-devey@soc.umass.edu

CC:      Victoria Lipnic, Acting Chair of the U.S. Equal Employment Opportunity
         Commission, U.S. Equal Employment Opportunity Commission, 131 M Street,
         NE, Washington, DC 20507, Victoria.Lipnic@eeoc.gov; EEOC Commissioners
         Jenny.Yang@eeoc.gov, Chai.Feldblum@ eeoc.gov, & Charlotte.Burrows@eeoc.gov


RE:      Utility of EEOC Pay Data Collection

DATE:    6-6-2017

It has come to my attention that some parties have questioned the utility of the currently approved plans
for the EEOC to begin collecting pay data from medium and large private sector employers.  As a
person with deep experience using EEOC data and broad knowledge of the regulatory process I would
like to point out the utility of these data for public policy, citizen knowledge, and enforcement.

1. The 1964 Civil Rights Act charged the EEOC with monitoring equal employment opportunity
   progress in the private sector. In 1966 the EEOC began collecting the current EEO-1 private
   sector reports. Workplace and firm level private sector pay data have never been available to
   support the EEOC's statutory charge to monitor progress, despite the obvious relevance of pay
   disparities to this goal.
2. Citizens would be well served by data that allows the calculation of actual workplace pay
   disparity trends and that makes visible variation among employers in gender and racial pay
   disparities. The national goal to eliminate racial and gender employment discrimination requires
   earnings data, both to document progress and identify bottlenecks in our march toward a more
   equal opportunity society.
3. The 1964 Civil Rights Act also charged the EEOC with identifying best practices in moving
   toward equal opportunity in employment. These types of causal studies have been undertaken by
   academics with access to EEO-1 reports. All of the past research has focused on employment
   levels, segregation or access to specific broad occupations. Compared to earnings, the EEO-1
   occupational categories are a crude tool for assessing progress across the entire national

economy. The advent of pay data collection will allow researchers to identify the degree to which pay disparities arise from segregation between firms, occupational segregation within firms, and pay disparities within occupations.

4. Clearly we know that there are stubbornly large gender and racial earnings gaps in the U.S. We also know that there is discrimination in hiring, firing, and compensation practices. But to challenge discrimination we need to know where it is occurring and this cannot be done without pay and employment data linked to workplaces.

5. Current data collection, because it ignores firm variation in pay disparities can produce the misleading impression that all firms are the same in their EEO practices and outcomes. The truth is much more likely to be that some firms, industries and communities are becoming more equitable while others are getting worse.[1] The lack of firm or workplace level estimates of earnings disparities effectively makes firm variation in the size of gender and racial pay gaps invisible to both regulators and the public.

6. Current estimates of the pay gap blur the source of the gender and racial pay gaps, lumping together the within and between firm sources of the pay gaps. The former point towards problems of hiring discrimination and the latter to pay discrimination post-hire.

7. As a result, current pay gap statistics may overstate the role of employer disparate treatment in producing national gender and racial earnings gaps and trends, while understating the role of hiring discrimination, residential segregation and self-selection. Not being able to get these statistics right means that public policies aimed at reducing gender or racial earnings disparities lack clear policy relevant metrics.

8. The EEOC currently uses EEO-1 employment counts as part of its routine enforcement efforts. When investigating discrimination complaints EEOC staff can consult employment counts compared to workplaces in the same industry and local labor markets. These data allow them to distinguish between complaints that are likely to be limited to the person filing the complaint and workplace level disparity patterns. The addition of the pay data to routine reporting would provide the same functionality in distinguishing between individual complaints and larger workplace issues.

9. Importantly, the collection of pay data will allow the EEOC and OFCCP to establish baseline levels of pay inequality as part of complaint investigations and compliance reviews. This should reduce the exposure of many firms to exaggerated discrimination claims or intrusive compliance reviews. While pay data will not make either discrimination claims or compliance reviews go away, they should make both more efficient in the use of EEOC, OFCCP and firm resources.

10. The availability of pay data could aid the EEOC in deciding where to focus its investigative resources by eliminating from consideration firms with low or no pay disparities before case selection. While the proposed pay data collection is not sufficient to establish pay disparity under the Equal Pay Act, it could certainly be used to identify firms where no pay disparities are visible.

---

[1] I have no direct evidence for this assertion based on pay (since no firm level data exist yet) but there is substantial evidence to this effect on employment trends based on the EEO-1 employment data in my 2012 monograph (Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation).

OMB-Lawyer's Committee-000152

11. Pay data, like the employment data already collected by the EEOC, has the potential to identify firms with suspicious employment and pay practices. Employment data has been collected by the EEOC for the last 51 years and has not led to egregious targeting of corporate America. It seems unlikely that pay data would. Both the EEOC and OFCCP select cases on other bases and are aware that the criteria for concluding that discrimination is present are substantially higher than afforded by either simple employment counts or pay disparities.

12. OFCCP reviews, since they are neutrally selected to begin with, might become less intense for many firms, since some pay data could be analyzed by OFCCP staff prior to the compliance review reducing or even eliminating the need for firms to produce payroll data as part of compliance reviews.

**Conclusions**

Pay data collection will allow the EEOC to better monitor progress toward equal opportunity as mandated by the 1964 Civil Rights Act. Pay data will also allow researchers to investigate best practices in challenging racial and gender bias within firms. The planned pay data collection will improve the regulatory efficiency of the EEOC and OFCCP and should reduce the number of firms at risk for systemic investigations and full compliance reviews. Importantly, these data have the potential to move the national conversation on pay disparities away from vague accusations of discrimination aimed at all employers, to one that highlights the variation in equal employment opportunity progress among employers.

Finally, I have seen some recent statements suggesting that the collection of pay data by the EEOC produces some risk of disclosure of privileged firm information. The 1964 Civil Rights Act expressly forbids such disclosure and in the 51 years since these data collections began to my knowledge neither the EEOC or academic researchers detailed to the EEOC via Intergovernmental Personnel Act appointments have breached this confidentiality restriction.

**Biographical Statement**

Donald Tomaskovic-Devey, Professor of Sociology at the University of Massachusetts, Amherst, is the founding director of the Center for Employment Equity. He has been studying gender and racial employment segregation and pay gaps since the early 1980s. He has worked with EEO-1 reports since 2000 and has both consulted with and testified before the EEOC on the role of data collection and analysis in enforcement activity. He has also testified as an expert witness in a number of high profile class action discrimination lawsuits. His research on employment disparities has been funded by the U.S. Department of Labor, the National Science Foundation, the Russell Sage Foundation, and the W.K. Kellogg Foundation.

Representative publications include:

Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation.

Donald Tomaskovic-Devey, *Gender and Racial Inequality at Work: The Sources and Consequences of Job Segregation*. Ithaca, NY: ILR Press, 1993.

Anja-Kristin Abendroth, Silvia Maja Melzer, Alexandra Kalev, Donald Tomaskovic-Devey. 2017. "Women at Work: Women's Access to Power and the Gender Earnings Gap." *Industrial and Labor Relations Review*. 70:190-222.

OMB-Lawyer's Committee-000153

Donald Tomaskovic-Devey, Karen Brummond, Joo-Hee Han, Skylar Davidson. 2016. Private Sector Industry Disparities: A Report on Evidence of Systemic Disparities for Women, African Americans, Hispanics, Asians and Native Americans, EEODataNet.

Donald Tomaskovic-Devey, Martin Hällsten, and Dustin Avent-Holt. 2015. "Where do Immigrants Fare Worse? Modeling Workplace Wage Gap Variation with Longitudinal Employer-Employee Data." *American Journal of Sociology*. 120:1095-1143.

Dustin Avent-Holt and Donald Tomaskovic-Devey, 2012. **"**Relational Inequality: Gender Earnings Inequality in US and Japanese Manufacturing Plants in the Early 1980s." *Social Forces*. 91: 157-180.

Fidan Kurtulus and Donald Tomaskovic-Devey, 2012. **"**Do Female Top Managers Help Women to Advance? A Panel Study Using EEO-1 Records" *Annals of the American Academy of Political and Social Science*. 639: 173:197.

Kevin Stainback and Donald Tomaskovic-Devey, 2009. "Intersections of Power and Privilege: Long-Term Trends in Managerial Representation." *American Sociological Review*. 74:800-820.

McTague, Tricia, Kevin Stainback, and Donald Tomaskovic-Devey, 2009. "Organizational Response to Institutional Pressures for Equal Employment Opportunity since the Civil Rights Act of 1964." *Social Forces*. 87:1499-1527.

Donald Tomaskovic-Devey and Kevin Stainback. 2007. "Discrimination and Desegregation: Equal Opportunity Progress in U.S. Private Sector Workplaces Since the Civil Rights Act. *The Annals of the American Academy of Political and Social Science.* 609:49-84.

Donald Tomaskovic-Devey, Catherine Zimmer, Kevin Stainback, Corre Robinson, Tiffany Taylor, and Tricia McTague, 2006. "Documenting Desegregation: Segregation in American Workplaces by Race, Ethnicity, and Sex 1966-2000." *American Sociological Review*. 71:565-588.

Kevin Stainback, Corre Robinson, Donald Tomaskovic-Devey, 2005. "Race and Workplace Integration: A Politically Mediated Process?" *American Behavioral Scientist*. 48:1200-1229.

Corre L. Robinson, Tiffany Taylor, Donald Tomaskovic-Devey, Cathy Zimmer, and Matthew Irvin, 2005. "Studying Race and Sex Segregation at the Establishment-Level: Methodological Concerns and Substantive Opportunities in the Use of EEO-1 Data." *Work & Occupations*. 32:5-38.

Donald Tomaskovic-Devey and Sheryl Skaggs, 2002 "Sex Segregation, Labor Process Organization and Gender Earnings Inequality." *American Journal of Sociology*. 108:102-128.

Donald Tomaskovic-Devey and Sheryl Skaggs, "Workplace Gender and Racial Composition and Productivity: An Establishment Level Test of the Statistical Discrimination Hypothesis." *Work & Occupations*. 26:422-445. 1999.

Donald Tomaskovic-Devey, *Race, Ethnic and Gender Earnings Inequality: The Sources and Consequences of Employment Segregation*. Report to the Glass Ceiling Commission, U.S. Department of Labor, 1994.

Donald Tomaskovic-Devey, "The Gender and Race Composition of Jobs and the Male/Female, White/Black Pay Gaps." *Social Forces*. 92:45-76, 1993.

OMB-Lawyer's Committee-000154



**Department of Sociology**
**200 Hicks Way**
**University of Massachusetts-Amherst**
**Amherst-MA 01003-9277**



**Office: (413)-545-4070**
**Fax: (413)-545-3204**

TO:      John M. Mulvaney, Director, Office of Management and Budget, 725 17th Street
         NW, Washington, D.C. 20503: Ex 6 - (5 U.S.C. Sec 552(b)(6))

FROM:    Donald Tomaskovic-Devey, Professor of Sociology and Director of the Center for
         Employment Equity, University of Massachusetts, Amherst:
         tomaskovic-devey@soc.umass.edu

CC:      Victoria Lipnic, Acting Chair of the U.S. Equal Employment Opportunity
         Commission, U.S. Equal Employment Opportunity Commission, 131 M Street,
         NE, Washington, DC 20507, Victoria.Lipnic@eeoc.gov; EEOC Commissioners
         Jenny.Yang@eeoc.gov, Chai.Feldblum@ eeoc.gov, & Charlotte.Burrows@eeoc.gov

RE:      Utility of EEOC Pay Data Collection

DATE:    6-6-2017

It has come to my attention that some parties have questioned the utility of the currently approved plans
for the EEOC to begin collecting pay data from medium and large private sector employers.  As a
person with deep experience using EEOC data and broad knowledge of the regulatory process I would
like to point out the utility of these data for public policy, citizen knowledge, and enforcement.

1.  The 1964 Civil Rights Act charged the EEOC with monitoring equal employment opportunity
    progress in the private sector. In 1966 the EEOC began collecting the current EEO-1 private
    sector reports. Workplace and firm level private sector pay data have never been available to
    support the EEOC's statutory charge to monitor progress, despite the obvious relevance of pay
    disparities to this goal.

2.  Citizens would be well served by data that allows the calculation of actual workplace pay
    disparity trends and that makes visible variation among employers in gender and racial pay
    disparities. The national goal to eliminate racial and gender employment discrimination requires
    earnings data, both to document progress and identify bottlenecks in our march toward a more
    equal opportunity society.

3.  The 1964 Civil Rights Act also charged the EEOC with identifying best practices in moving
    toward equal opportunity in employment. These types of causal studies have been undertaken by
    academics with access to EEO-1 reports. All of the past research has focused on employment
    levels, segregation or access to specific broad occupations. Compared to earnings, the EEO-1
    occupational categories are a crude tool for assessing progress across the entire national

economy. The advent of pay data collection will allow researchers to identify the degree to which pay disparities arise from segregation between firms, occupational segregation within firms, and pay disparities within occupations.

4. Clearly we know that there are stubbornly large gender and racial earnings gaps in the U.S. We also know that there is discrimination in hiring, firing, and compensation practices. But to challenge discrimination we need to know where it is occurring and this cannot be done without pay and employment data linked to workplaces.

5. Current data collection, because it ignores firm variation in pay disparities can produce the misleading impression that all firms are the same in their EEO practices and outcomes. The truth is much more likely to be that some firms, industries and communities are becoming more equitable while others are getting worse.[1] The lack of firm or workplace level estimates of earnings disparities effectively makes firm variation in the size of gender and racial pay gaps invisible to both regulators and the public.

6. Current estimates of the pay gap blur the source of the gender and racial pay gaps, lumping together the within and between firm sources of the pay gaps. The former point towards problems of hiring discrimination and the latter to pay discrimination post-hire.

7. As a result, current pay gap statistics may overstate the role of employer disparate treatment in producing national gender and racial earnings gaps and trends, while understating the role of hiring discrimination, residential segregation and self-selection. Not being able to get these statistics right means that public policies aimed at reducing gender or racial earnings disparities lack clear policy relevant metrics.

8. The EEOC currently uses EEO-1 employment counts as part of its routine enforcement efforts. When investigating discrimination complaints EEOC staff can consult employment counts compared to workplaces in the same industry and local labor markets. These data allow them to distinguish between complaints that are likely to be limited to the person filing the complaint and workplace level disparity patterns. The addition of the pay data to routine reporting would provide the same functionality in distinguishing between individual complaints and larger workplace issues.

9. Importantly, the collection of pay data will allow the EEOC and OFCCP to establish baseline levels of pay inequality as part of complaint investigations and compliance reviews. This should reduce the exposure of many firms to exaggerated discrimination claims or intrusive compliance reviews. While pay data will not make either discrimination claims or compliance reviews go away, they should make both more efficient in the use of EEOC, OFCCP and firm resources.

10. The availability of pay data could aid the EEOC in deciding where to focus its investigative resources by eliminating from consideration firms with low or no pay disparities before case selection. While the proposed pay data collection is not sufficient to establish pay disparity under the Equal Pay Act, it could certainly be used to identify firms where no pay disparities are visible.

---

[1] I have no direct evidence for this assertion based on pay (since no firm level data exist yet) but there is substantial evidence to this effect on employment trends based on the EEO-1 employment data in my 2012 monograph (Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation).

OMB-Lawyer's Committee-000156

11. Pay data, like the employment data already collected by the EEOC, has the potential to identify firms with suspicious employment and pay practices. Employment data has been collected by the EEOC for the last 51 years and has not led to egregious targeting of corporate America. It seems unlikely that pay data would. Both the EEOC and OFCCP select cases on other bases and are aware that the criteria for concluding that discrimination is present are substantially higher than afforded by either simple employment counts or pay disparities.

12. OFCCP reviews, since they are neutrally selected to begin with, might become less intense for many firms, since some pay data could be analyzed by OFCCP staff prior to the compliance review reducing or even eliminating the need for firms to produce payroll data as part of compliance reviews.

**Conclusions**

Pay data collection will allow the EEOC to better monitor progress toward equal opportunity as mandated by the 1964 Civil Rights Act. Pay data will also allow researchers to investigate best practices in challenging racial and gender bias within firms. The planned pay data collection will improve the regulatory efficiency of the EEOC and OFCCP and should reduce the number of firms at risk for systemic investigations and full compliance reviews. Importantly, these data have the potential to move the national conversation on pay disparities away from vague accusations of discrimination aimed at all employers, to one that highlights the variation in equal employment opportunity progress among employers.

Finally, I have seen some recent statements suggesting that the collection of pay data by the EEOC produces some risk of disclosure of privileged firm information. The 1964 Civil Rights Act expressly forbids such disclosure and in the 51 years since these data collections began to my knowledge neither the EEOC or academic researchers detailed to the EEOC via Intergovernmental Personnel Act appointments have breached this confidentiality restriction.

**Biographical Statement**

Donald Tomaskovic-Devey, Professor of Sociology at the University of Massachusetts, Amherst, is the founding director of the Center for Employment Equity. He has been studying gender and racial employment segregation and pay gaps since the early 1980s. He has worked with EEO-1 reports since 2000 and has both consulted with and testified before the EEOC on the role of data collection and analysis in enforcement activity. He has also testified as an expert witness in a number of high profile class action discrimination lawsuits. His research on employment disparities has been funded by the U.S. Department of Labor, the National Science Foundation, the Russell Sage Foundation, and the W.K. Kellogg Foundation.

Representative publications include:

Kevin Stainback and Donald Tomaskovic-Devey. 2012. *Documenting Desegregation: Racial and Gender Segregation in Private Sector Employment since the Civil Rights Act.* NY: Russell Sage Foundation.

Donald Tomaskovic-Devey, *Gender and Racial Inequality at Work: The Sources and Consequences of Job Segregation*. Ithaca, NY: ILR Press, 1993.

Anja-Kristin Abendroth, Silvia Maja Melzer, Alexandra Kalev, Donald Tomaskovic-Devey. 2017. "Women at Work: Women's Access to Power and the Gender Earnings Gap." *Industrial and Labor Relations Review*. 70:190-222.

OMB-Lawyer's Committee-000157

Donald Tomaskovic-Devey, Karen Brummond, Joo-Hee Han, Skylar Davidson. 2016. Private Sector Industry Disparities: A Report on Evidence of Systemic Disparities for Women, African Americans, Hispanics, Asians and Native Americans, EEODataNet.

Donald Tomaskovic-Devey, Martin Hällsten, and Dustin Avent-Holt. 2015. "Where do Immigrants Fare Worse? Modeling Workplace Wage Gap Variation with Longitudinal Employer-Employee Data." *American Journal of Sociology*. 120:1095-1143.

Dustin Avent-Holt and Donald Tomaskovic-Devey, 2012. **"**Relational Inequality: Gender Earnings Inequality in US and Japanese Manufacturing Plants in the Early 1980s." *Social Forces*. 91: 157-180.

Fidan Kurtulus and Donald Tomaskovic-Devey, 2012. **"**Do Female Top Managers Help Women to Advance? A Panel Study Using EEO-1 Records" *Annals of the American Academy of Political and Social Science*. 639: 173:197.

Kevin Stainback and Donald Tomaskovic-Devey, 2009. "Intersections of Power and Privilege: Long-Term Trends in Managerial Representation." *American Sociological Review*. 74:800-820.

McTague, Tricia, Kevin Stainback, and Donald Tomaskovic-Devey, 2009. "Organizational Response to Institutional Pressures for Equal Employment Opportunity since the Civil Rights Act of 1964." *Social Forces*. 87:1499-1527.

Donald Tomaskovic-Devey and Kevin Stainback. 2007. "Discrimination and Desegregation: Equal Opportunity Progress in U.S. Private Sector Workplaces Since the Civil Rights Act. *The Annals of the American Academy of Political and Social Science*. 609:49-84.

Donald Tomaskovic-Devey, Catherine Zimmer, Kevin Stainback, Corre Robinson, Tiffany Taylor, and Tricia McTague, 2006. "Documenting Desegregation: Segregation in American Workplaces by Race, Ethnicity, and Sex 1966-2000." *American Sociological Review*. 71:565-588.

Kevin Stainback, Corre Robinson, Donald Tomaskovic-Devey, 2005. "Race and Workplace Integration: A Politically Mediated Process?" *American Behavioral Scientist*. 48:1200-1229.

Corre L. Robinson, Tiffany Taylor, Donald Tomaskovic-Devey, Cathy Zimmer, and Matthew Irvin, 2005. "Studying Race and Sex Segregation at the Establishment-Level: Methodological Concerns and Substantive Opportunities in the Use of EEO-1 Data." *Work & Occupations*. 32:5-38.

Donald Tomaskovic-Devey and Sheryl Skaggs, 2002 "Sex Segregation, Labor Process Organization and Gender Earnings Inequality." *American Journal of Sociology*. 108:102-128.

Donald Tomaskovic-Devey and Sheryl Skaggs, "Workplace Gender and Racial Composition and Productivity: An Establishment Level Test of the Statistical Discrimination Hypothesis." *Work & Occupations*. 26:422-445. 1999.

Donald Tomaskovic-Devey, *Race, Ethnic and Gender Earnings Inequality: The Sources and Consequences of Employment Segregation*. Report to the Glass Ceiling Commission, U.S. Department of Labor, 1994.

Donald Tomaskovic-Devey, "The Gender and Race Composition of Jobs and the Male/Female, White/Black Pay Gaps." *Social Forces*. 92:45-76, 1993.

OMB-Lawyer's Committee-000158