UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS and NATIONAL WOMEN'S LAW CENTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>OFFICE OF MANAGEMENT AND BUDGET,<br><br>*Defendant*. | Civ. A. No. 18-0645 (EGS) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JESSIE K. LIU
United States Attorney

DANIEL F. VAN HORN
Chief, Civil Division

DANIEL P. SCHAEFER
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

Dated: November 8, 2019                *Counsel for Defendant*

# TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................ 1

I.      Any Facts That OMB Withheld Are Inextricably Intertwined With Deliberative Discussion, Opinions, and Policy Recommendations............................................................ 1

II.     Defendant's *Vaughn* Index and Declaration Describe the Documents and Justifications for the Withholdings in Reasonably Specific Detail. ................................... 3

III.    Plaintiffs' Countervailing Evidence Is Insufficient to Overcome the Presumption of Good Faith Accorded to OMB's Declaration. .................................................................. 8

        A.    Any Minor Discrepancies With the (b)(5) Redactions Do Not Call Into Question the Propriety of the Withholdings. ............................................................ 8

        B.    OMB's Withholdings in the Nine Records That Plaintiffs Focus Upon Are Proper. ........................................................................................................... 10

IV.    Summary Judgment Is Appropriate Without an *In Camera* Examination of the Records. ............................................................................................................. 14

Conclusion ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Mgmt. Servs., LLC v. Dep't of the Army*,
 842 F. Supp. 2d 859 (E.D. Va. 2012) ............................................................................. 9

*Armstrong v. Exec. Off. of the President*,
 97 F.3d 575 (D.C. Cir. 1996) ......................................................................................... 14

*Brannum v. Dominguez*,
 377 F. Supp. 2d 75 (D.D.C. 2005) ................................................................................ 2

*Caton v. Norton*,
 Civ. A. No. 04-0439, 2005 WL 3116613 (D.N.H. Nov. 21, 2005) ............................... 9

*Church of Scientology Int'l v. DOJ*,
 30 F.3d 224 (1st Cir. 1994) ............................................................................................ 9

*Coastal States Gas Corp. v. DOE*,
 617 F.2d 854 (D.C. Cir. 1980) ....................................................................................... 6

*Davis v. DOJ*,
 968 F.2d 1276 (D.C. Cir. 1992) ..................................................................................... 4

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
 608 F.2d 1381 (D.C. Cir. 1979) ..................................................................................... 15

*Judicial Watch, Inc. v. DHS*,
 841 F. Supp. 2d 142 (D.D.C. 2012) .............................................................................. 6, 7

*Judicial Watch, Inc. v. Food & Drug Admin.*,
 449 F.3d 141 (D.C. Cir. 2006) ....................................................................................... 4, 5

*Landmark Legal Found. v. IRS*,
 267 F.3d 1132 (D.C. Cir. 2001) ..................................................................................... 3

*Larson v. Dep't of State*,
 565 F.3d 857 (D.C. Cir. 2009) ....................................................................................... 15

*Loving v. DOD*,
 550 F.3d 32 (D.C. Cir. 2008) ......................................................................................... 14

*McKinley v. Bd. of Governors of Fed. Res. Sys.*,
 647 F.3d 331 (D.C. Cir. 2011) ....................................................................................... 1, 2

*Military Audit Project v. Casey*,
 656 F.2d 724 (D.C. Cir. 1981) ....................................................................................... 3

*Montrose Chem. Corp. of Cal. v. Train*,
 491 F.2d 63 (D.C. Cir. 1974) .................................................................................................. 2

*NLRB v. Robbins Tire & Rubber Co.*,
 437 U.S. 214 (1978) .............................................................................................................. 14

*Oglesby v. U.S. Dep't of the Army*,
 79 F.3d 1172 (D.C. Cir. 1996) ................................................................................................ 5

*Peter S. Herrick's Customs & Int'l Trade Newsletter v. USCBP*,
 Civ. A. No. 04-0377 (JDB), 2005 WL 3274073 (D.D.C. Sept. 22, 2005) ............................... 5

*Porter v. CIA*,
 579 F. Supp. 2d 121 (D.D.C. 2008) ........................................................................................ 8

*Privacy Info. Ctr. v. DOJ*,
 320 F. Supp. 3d 110 (D.D.C. 2018) ........................................................................................ 2

*SafeCard Servs., Inc. v. SEC*,
 926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................... 8, 9

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*,
 823 F.2d 574 (D.C. Cir. 1987) ................................................................................................ 7

*Wolfe v. HHS*,
 839 F.2d 768 (D.C. Cir. 1988) ................................................................................................ 2

**Statutes**

5 U.S.C. § 552(a)(4)(B) ............................................................................................................... 14

**Introduction**

Plaintiffs' Opposition fails to provide any legitimate reason for denying summary judgment to Defendant in this case. Its principal argument – that Defendant Office of Management and Budget ("OMB" or the "Agency") failed to release all segregable factual material in the records – is contrary to the law in this Circuit. Defendant's evidence demonstrates that any facts that OMB withheld are inextricably intertwined with the deliberative process described in the Agency's declaration and *Vaughn* index and thus properly withheld as privileged.

Plaintiffs also ask the Court to draw broad conclusions based on nine specific records that Plaintiffs say exemplify the impropriety of the Exemption 5 withholdings. A review of OMB's explanations of the withholdings and other record evidence confirms that OMB's withholdings in these nine records were all correct.

Finally, the minor discrepancies and other processing issues described in Plaintiffs' Opposition are not grounds for overcoming the presumption of good faith accorded to the Agency's declaration.

**Argument**

**I.    Any Facts That OMB Withheld Are Inextricably Intertwined With Deliberative Discussion, Opinions, and Policy Recommendations.**

To fall within the deliberative process privilege, the material must be "deliberative." *McKinley v. Bd. of Governors of Fed. Res. Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). In some contexts the release of factual information does not expose the deliberations or opinions of agency personnel, but that is not the case here. In this case, OMB determined that "with respect to each record withheld in full . . . , the record consists of discussions involving economic, legal, and policy issues, in which facts are inextricably intertwined with deliberative discussion,

opinions, and policy recommendations, such that disclosing any facts, and how they are presented, would reveal the thought process of OMB during deliberations. 1st Walsh Decl. ¶ 20 (ECF No. 26-3).

Plaintiffs say that they "seek disclosure of *which* facts OMB gathered and considered, not *how* OMB considered, weighed, analyzed or applied those facts. Pls.' Opp. at 6 (ECF No. 29) (emphasis in the original). According to Plaintiffs, "[r]evealing the facts that OMB gathered and considered in its review would not reveal the nature of OMB's deliberations." *Id.* Defendant respectfully disagrees. A simple bright line between factual and deliberative material cannot be easily drawn in a case such as this in which the facts themselves reflect the Agency's deliberative process.

Under this Circuit's precedent, factual information should be examined "in light of the policies and goals that underlie" the deliberative process privilege and in "the context in which the materials are used." *Wolfe v. HHS*, 839 F.2d 768, 774 (D.C. Cir. 1988). In this case, information regarding "which facts OMB gathered and considered" in the course of its deliberation on whether to initiate a review and stay of the previously approved collection of pay data was used by OMB personnel in developing recommendations to an agency decisionmaker. 1st Walsh Decl. ¶ 20. And thus, these are "precisely the type of pre-decisional documents intended to fall under Exemption 5." *See Brannum v. Dominguez*, 377 F. Supp. 2d 75, 83 (D.D.C. 2005). The very act of deciding "which facts" to gather and consider out of a larger group of facts is deliberative. *See Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974) (holding that the very act of separating significant facts from insignificant facts constituted an exercise of judgment by agency personnel); *Elec. Privacy Info. Ctr. v. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) (noting that "the selection or organization of facts can be

part of an agency's deliberative process and so exempt from FOIA"). The "factual considerations" that fall within the scope of OMB's authority under the Paperwork Reduction Act and the implementing regulations (*see* Pl.'s Opp. at 5-6) are an essential part of the deliberative process at OMB that are privileged.

## II. Defendant's *Vaughn* Index and Declaration Describe the Documents and Justifications for the Withholdings in Reasonably Specific Detail.

OMB satisfied its evidentiary burden by providing a *Vaughn* index and supporting declaration that describe the documents and justifications with "reasonably specific detail" and which together demonstrate that all of the withheld material "logically falls within the claimed exemption." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Therefore, the Court should reject Plaintiffs' argument that OMB's evidence is insufficiently detailed for the Court to assess the applicability of the deliberative process privilege. *See* Pls.' Opp. at 8-9.

Part of Plaintiffs' objection appears to stem from the fact that many of the documents on the *Vaughn* index have identical descriptions that are somewhat brief and general. *See* Pls.' Opp. at 8-9, 13. A *Vaughn* index is not deficient simply because the agency groups similar documents into broad categories and provides similar or repetitive descriptions of the withholdings based on those categories. *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) (finding that repetitive nature did not make *Vaughn* Index deficient because it was "not the agency's fault that thousands of documents belonged in the same category, thus leading to exhaustive repetition"). In this case, the 65 records on the *Vaughn* index with (b)(5) withholdings fall into a

few broad categories of records: (1) inter-agency or intra-agency email communications, (2) draft documents, and (3) internal memoranda and presentations.[1]

The Agency's evidence establishes that all of these documents were prepared during the course of the Agency's deliberative process regarding OMB's then-pending decision on whether to issue a review and stay of the EEOC's pay data collection. *See* 1st Walsh Decl. ¶¶ 10-14. While the specific subject matter varied among the records, all of the portions that were withheld were deemed to be part of the same overarching deliberative process described in OMB's declaration. *Id.* ¶ 18; *see also Davis v. DOJ*, 968 F.2d 1276, 1282 n.4 (D.C. Cir. 1992) (opining that precise matching of exemptions with specific withheld items "may well be unnecessary" when all government's generic categorical claims have merit).

On this record, OMB provided reasonably specific descriptions of the withholdings on the *Vaughn* index that allow Plaintiffs and the Court to verify that the limited information that OMB redacted in part (in the case of the emails) or withheld in full (in the case of drafts and a few other presentations and memos prepared during the deliberative process) is all privileged. First, the Court need not review the entries in the *Vaughn* index in isolation, but may consider other evidence in the record, including the supporting declarations. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (an agency that chooses not to disclose documents may submit other measures in combination with or in lieu of the *Vaughn* index itself, including supporting affidavits). Together, the *Vaughn* index and supporting declarations establish that these are all inter-agency and intra-agency communications containing pre-decisional and deliberative information regarding OMB's then-pending decision whether to

---

[1] The original *Vaughn* index contained 87 entries, but as OMB's declarant explains in her supplemental declaration 22 of those entries can be removed because they no longer contain (b)(5) withholdings. 2nd Walsh Decl. ¶¶ 15-16 (Nov. 8, 2019) (Reply Ex. 1).

4

issue a review and stay of the EEOC's pay data collection for employers using the EEOC's EEO-1 form.  *See* 1st Walsh Decl. ¶¶ 10-14.

In the case of the emails, the descriptions of the (b)(5) redactions on OMB's *Vaughn* index state that "the withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff at the time of the discussion."  The *Vaughn* index also contains additional information about each email, including the subject line of the email and the to/from fields.  It should not be necessary for OMB to explain the precise role that each and every email played in the decision-making process for OMB to reasonably describe the records.  *See* Pls.' Opp. at 13.  "The agency has the difficult obligation to justify its actions without compromising its original withholdings by disclosing too much information."  *Judicial Watch, Inc.*, 449 F.3d at 146.  OMB carefully reviewed the emails and only redacted the specific portions of text that OMB deemed to be deliberative in nature.  OMB cannot be any more specific about the content of the email and attachments without revealing privileged information the withholding of which is the very issue in the litigation.  *See Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document without actually disclosing information that deserves protection."); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. USCBP*, Civ. A. No. 04-0377 (JDB), 2005 WL 3274073, at *4 (D.D.C. Sept. 22, 2005) ("The Court will not require an agency to describe the withheld material with such specificity as to result in the constructive equivalent of actual disclosure.").

OMB's descriptions of the withheld-in-full records are also reasonably specific.  Most of the withheld-in-full records are deliberative drafts.  One of the fields on the *Vaughn* index

5

includes the title of the file (e.g., "EEO-1 outline.docx", "Re-review and Stay Memo for EEOC.docx").  As explained in the *Vaughn* index, OMB withheld these records in full because they contain "draft documents in the process of revision that do not reflect final agency decisions but are part of a decisionmaking process regarding OMB's decision whether to issue a review and stay of the EEOC's pay data collection."  OMB's declarant further explained that records were still "in the process of revision and do not reflect final agency decisions."  1st Walsh Decl. ¶ 14.  These drafts were deliberative on two levels in that there were "part of both a decision-making process regarding the final composition of such documents, and also the larger decision-making process regarding OMB's decision whether to issue a review and stay of the EEOC's pay data collection."  *Id.*  Plaintiffs continue to challenge these withholdings, but it is usually beyond dispute in a FOIA case that draft documents such as these are covered by the deliberative process privilege.  *See Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 867 (D.C. Cir. 1980) (holding that deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

The cases that Plaintiffs provide in support of their argument that OMB's descriptions are insufficiently detailed are easily distinguishable.  In *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 154 (D.D.C. 2012), the Court found that the agency's descriptions failed to demonstrate that the agency had properly relied on the attorney-client privilege as a basis for the withholdings.  The *Judicial Watch* court found that the agency's *Vaughn* index and declaration "fail[ed] to provide any basis for this Court to find that the confidentiality of the communications at issue ha[d] been maintained."  *Id.* at 154.  Further, the agency's descriptions did not allow the court to assess whether the agency's invocation of the attorney-client privilege was proper because the

descriptions merely "parrot[ed] selected elements of the attorney-client privilege," which is not the case here. *Id.*[2]

In *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. DOJ*, 823 F.2d 574, 584 (D.C. Cir. 1987), the descriptions of the withholdings were deemed deficient because they consisted almost entirely of each document's issue date, its author and intended recipient, and the "briefest of references to its subject matter." A typical *Vaughn* index entry in that case stated that the document contained a "candid discussion and recommendation as to strategy is deleted to protect the intra-agency deliberative process and attorney work-product," which provided no factual context for the agency's invocation of the privileges. *Id.* at 584. To invoke the deliberative process privilege, the agency had to supply additional information, including identification of the specific final decision to which the advice contained in the withheld documents contributed, so that the court could sensibly determine whether each invocation of deliberative process privilege was properly grounded. *Id.*

OMB's descriptions in this case do not suffer from these deficiencies. Plaintiffs do not dispute that OMB's descriptions identify the specific final decision at issue. *See* Pls.' Opp. at 13 ("OMB's provided explanation in the Vaughn index identifies OMB's ultimate decision (to stay the EEO-1 pay data collection) and establishes that the document is pre-decisional."). Moreover, they are not simply generic recitations of the elements of the deliberative process privilege. Therefore, this Court should find that OMB provided reasonably specific descriptions of the documents and withholdings.

---

[2] "Almost without exception, DHS asserts, without any further elaboration, that 'the attorney-client privilege appl[ies] because this document was created by agency attorneys . . . to provide legal analysis and advice." *Id.* at 154-55.

### III. Plaintiffs' Countervailing Evidence Is Insufficient to Overcome the Presumption of Good Faith Accorded to OMB's Declaration.

OMB's declaration confirms that OMB carefully assessed whether any additional factual information could be segregated and that it produced all nonexempt segregable information. 1st Walsh Decl. ¶ 19. Plaintiffs point to a few pieces of evidence they say affirmatively establishes that OMB's withholdings are improper, but Plaintiffs' arguments mostly amount to pure speculation about the existence of non-deliberative facts in these records. Plaintiffs' conjecture about what must be contained in the documents is not sufficient to overcome the presumption of good faith accorded to the Agency's declaration and *Vaughn* index. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Porter v. CIA*, 579 F. Supp. 2d 121, 125-26 (D.D.C. 2008) (agency's reasonably detailed and non-conclusory declaration is accorded presumption of good faith that cannot be rebutted by purely speculative claims about the existence and discoverability of other information).

#### A. Any Minor Discrepancies With the (b)(5) Redactions Do Not Call Into Question the Propriety of the Withholdings.

Plaintiffs first argue that the Court can verify that OMB's (b)(5) withholdings are improper because "OMB redacted information under Exemption 5 that it produced elsewhere in the production." Pls.' Opp. at 9. Because Plaintiffs identified one email with an inconsistency in how the redactions had been applied by OMB, they want the Court to presume that the entire production is suspect and to give everything closer scrutiny than it otherwise would. *Id.*

Plaintiffs try to paint a picture that OMB was careless in applying the redactions, but the record does not support this. For one thing, the fact that Plaintiffs identified only one email with a discrepancy speaks to the very limited extent of the problem.

Plaintiffs are correct that there were initially some inconsistences in the (b)(5) redactions in OMB's productions, including in the specific example Plaintiffs provided. *See* Pls.' Opp. at 9

8

(citing Goldberger Decl. ¶¶ 4-5 & Exs. A & B). But Plaintiffs fail to mention that prior to filing its dispositive motion Defendant recognized this problem itself and took immediate steps to resolve the issue. On September 18, 2019, OMB issued a supplemental production consisting of 48 pages of emails. As defense counsel explained at the time, the purpose of the supplemental production was to fix the inconsistencies in the (b)(5) redactions. 2nd. Walsh Decl. ¶¶ 9-10. It appears now that the supplemental production resolved most, but not all of the discrepancies in the productions. *Id.* ¶ 14. The supplemental production addressed the discrepancy in the specific example that Plaintiffs flagged in their Opposition, but OMB assigned the document a new unique *Bates* number. *Id.* ¶ 13. Although it was assigned a new *Bates* number, it is not difficult to see that they are in fact the same document.

In any event, a minor processing error of the kind Plaintiffs identified in Opposition is not grounds for striking the entire *Vaughn* index or calling into question the good faith accorded to OMB's declaration. *See SafeCard Services, Inc.*, 926 F.2d at 1200; *Church of Scientology Int'l v. DOJ*, 30 F.3d 224, 233 (1st Cir. 1994); *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 842 F. Supp. 2d 859, 870 (E.D. Va. 2012) (finding that initial errors, which were corrected by agency, were insufficient grounds for striking entire index or questioning good faith); *Caton v. Norton*, Civ. A. No. 04-0439, 2005 WL 3116613, at *11 (D.N.H. Nov. 21, 2005) (concluding that mistakes in processing FOIA request, which agency "convincingly explained," were not sufficient to overcome "presumption of good faith" given to its declaration).

To be clear, OMB is not seeking to withhold any information that it has already produced to Plaintiffs in this case. 2nd Walsh Decl. ¶ 14. To the extent any inconsistencies remain, (i.e., information released in one copy of a document, identical information withheld in another copy) these can be easily corrected upon request. *Id.* Moreover, Plaintiffs' argument about

9

discrepancies is not grounds for denying Defendant's Motion because fixing the discrepancy will not result in the release of any additional information that is not already in Plaintiffs' possession in at least one copy of a record produced to Plaintiffs in this case.

**B.    OMB's Withholdings in the Nine Records That Plaintiffs Focus Upon Are Proper.**

Plaintiffs also point to nine specific records (in six numbered items) that they say "exemplify OMB's inadequate showing" on its (b)(5) withholdings. *See* Pls.' Opp. at 10-11. As explained below, the record establishes that OMB's withholdings in the nine records that now appear to be the main focus of Plaintiffs' Opposition are proper.

1. *Vaughn* **Entry No. 15: "EEO-1 Outline"**

OMB withheld in full a document with the description "EEO-1 Outline.docx" (OMB-Lawyers' Committee-000033-38.) The *Vaughn* index entry for this document reads:

> FOIA Exemption b(5) – Internal Deliberations. The withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion.

As noted above, Plaintiffs do not dispute that OMB's explanation establishes: (a) the relevant final decision (i.e., the decision on whether to issue a review and stay of the EEOC's pay data collection); and (b) that the document is pre-decisional. *See* Pls.' Opp. at 13. Plaintiffs take issue with the fact that OMB's description does not explain the role that this particular document played in the deliberative process. *See id.* As explained above, this argument fails because OMB properly placed this record into a broad category of records on the *Vaughn* index and in the declaration and OMB explained with reasonable specificity how that entire category of records is privileged. *See* Discussion at Part II, *supra*.

Although not in the explanation for this particular entry, OMB's document production establishes who authored the presentation, who it was prepared for, when it was prepared, and the purpose of the presentation. *See* 2nd Walsh Decl. ¶ 3 & Ex. A thereto (OMB 000271-72). The EEO-1 Outline was an attachment to an email dated May 1, 2017, from Jim Paretti, Jr., Esq., Chief of Staff and Senior Counsel, Office of Acting Chair Victoria A. Lipnic, U.S. Equal Employment Commission ("Chief of Staff Paretti") to Dominic Mancini, Deputy and Acting Administrator, of OMB's Office of Information and Regulatory Affairs ("Deputy Mancini"). *See id.* In the email Mr. Paretti wrote:

> In anticipation of tomorrow's 2:00 [meeting], attached please find an outline of Chair Lipnic's anticipated presentation. Please let me know if you need anything further. Anything additional on whether Director Mulvaney wants to speak with Vicki prior-to?

These emails in OMB's production also reflect that the EEO-1 Outline was forwarded to other OMB employees in preparation for the meeting that occurred on May 2, 2017. *See id.*

Particularly when considered in this context, the general description of this record on the *Vaughn* index provides sufficient information to establish that the entirety of Chair Lipnic's EEO-1 presentation that was attached to the email to OMB is privileged. Nonetheless, OMB's declarant re-reviewed the record in connection with this Reply and confirmed that no additional factual information in the presentation can be segregated and released. 2nd Walsh Decl. ¶ 3.

2. ***Vaughn* Entry Nos. 19 to 22: "EEO-1/Memo for OIRA" Email and Attachments "Attach1USC," Attach2EEAC," and "EEO-1 Memo Rao 07.2017.docx."**

These records consist of another email from Chief of Staff Paretti of the EEOC to Deputy Mancini of OMB dated July 14, 2017, with three attachments. *See* 2nd Walsh Decl. ¶ 4 & Ex. B thereto (OMB 000042). The text of the email was redacted in full and the three attachments were all also withheld in full.

Plaintiffs note that the two of the attachments "Attach1USC" and "Attach2EEAC" appear to refer to two non-governmental organizations: the United States Chamber of Commerce and the Equal Employment Advisory Council. Based on the document titles alone, Plaintiffs "presume" that the documents "discuss those organizations or contain information from them." Pls.' Opp. at 14. Plaintiffs speculation about what the documents might contain does not overcome the presumption of good faith accorded to the Agency's declaration. But even assuming Plaintiffs are correct in their assumption that these memos pertain to the non-governmental organizations in question, that says nothing about whether the information contained in the memos is deliberative in nature (which the Agency has confirmed it is).

Plaintiffs contend that OMB "has provided no explanation of how those documents fit within the scope of the deliberative process privilege. Pls.' Opp. at 14. But it has. The description for these entries on the *Vaughn* index state that the "withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion." This is a reasonably specific description of the email and attachments in question.

3. ***Vaughn* Entry No. 40: Email with the Subject Line "Call or Meet Next Week," Specifically the Email from Victoria Lipnic to Julie Radford at 8:44 PM on July 10, 2017 Email**

OMB-Lawyer's Committee-000166 to 172 contains a series of emails sent between EEOC Acting Chair Victoria Lipnic and Julie Radford, Chief of Staff for Ivanka Trump. *See* 2nd Walsh Decl. ¶ 5 & Ex. C thereto. Plaintiffs do not explain why they dispute OMB's withholdings in these particular emails. It is not self-evident from the face of the emails. As is the case with the other documents that Plaintiffs specifically challenge, OMB's declarant reconfirms that the (b)(5) withholdings in these particular emails are correct. 2nd Walsh Decl.

12

¶ 5 ("I stand by my earlier statement that no additional information, factual or otherwise, can be segregated and disclosed without revealing the nature and substance of OMB's deliberations that are privileged and exempt from disclosure.").

On June 7, 2017, Ms. Lipnic sent Ms. Radford an email about setting up a call or email for the following week. They exchanged a series of emails over the following weeks in an attempt to get a meeting scheduled. OMB withheld a portion of one of the emails that Ms. Lipnic sent to Ms. Radford on July 10, 2017, as deliberative. On July 10, Ms. Radford responded "do you mind sharing what the requests are that you have been receiving?" Later that evening, Ms. Lipnic replied: "Just to finish the thought from earlier today." A large block of text following that sentence was redacted as deliberative. After the redactions, the last sentence of Ms. Lipnic's email states "let me know how I can be helpful." The *Vaughn* entry for these particular emails states that the portions that were withheld consist of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection. This too is a reasonably specific explanation that shows how the withheld material logically falls within the claimed exemption.

4. ***Vaughn* Entry No. 76: Document Titled "2017-06-23 Memorandum re Equal Pay_.docx."**

    *See below*.

5. ***Vaughn* Entry No. 77: Document Titled "EPA Affirmative Defense Memo (June 23 2017).docx."**

    *See below*.

6. ***Vaughn* Entry No. 83: Document Titled "Background Memo on EEO-1rt jn.docx."**

    OMB withheld in full two documents with the filenames "2017-06-23 Memorandum re Equal Pay_.docx" and "EPA Affirmative Defense Memo (June 23 2017).docx," and withheld in

13

part a document entitled "Background Memo on EEO-1rt jn.docx."  *See* 2nd Walsh Decl. ¶¶ 6-8; 1st Walsh Decl. ¶ 20.

OMB withheld these last three records in full or in part because OMB determined that no additional information could be segregated and disclosed without revealing the nature and substance of OMB's deliberations.  *See id.*  Disclosure of any additional factual information in these documents "would reveal both the scope at the time of a sensitive deliberative process and aspects of proposals and thought processes that were built on the antecedent factual information being discussed."  *See id.*  In the case of the "Background Memo on EEO-1," which is a memorandum prepared by OMB staff and dated April 24, 2017, OMB reviewed the record for segregability and produced a portion of the record.  2nd Walsh Decl. ¶ 8 & Ex. D thereto (OMB 000267-70).  Accordingly, the record establishes that OMB properly withheld deliberative material from the above nine records.

## IV. Summary Judgment Is Appropriate Without an *In Camera* Examination of the Records.

Plaintiffs also request that the Court review *in camera* the nine records that are the primary focus of their Opposition, which total 56 pages.  Pls.' Opp. at 18-19.  The FOIA authorizes the Court to conduct an *in camera* examination of documents.  5 U.S.C. § 552(a)(4)(B).  This Court has "broad discretion" to decide if this type of review "is necessary to determine whether the government has met its burden."  *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008) (citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 577-78 (D.C. Cir. 1996)).  But courts typically exercise their discretionary authority to order *in camera* inspection in exceptional, rather than routine, cases because such review circumvents the adversarial process and may be burdensome for the Court to conduct.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (explaining that *in camera* review provision "is designed to be

invoked when the issue before the District Court could not be otherwise resolved"). "If the agency's affidavits 'provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.'" *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). The D.C. Circuit has "made clear that '[w]hen the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate.'" *Id.* (quoting *Hayden*, 608 F.2d at 1387).

In this case, OMB's declaration and *Vaughn* index are sufficient standing alone to place the challenged documents within Exemption 5. It is unnecessary for the Court to review the records because Plaintiffs fail to present any evidence contradicting the Agency's declaration or suggesting bad faith. *See Larson*, 565 F.3d at 870. Defendant understands Plaintiffs' request for *in camera* review to be limited to the nine records that they expressly challenge in their Opposition. If the Court determines it is necessary to review these records *in camera* before rendering its decision, Defendant can provide unredacted copies of the records to the Court upon request.

## **Conclusion**

For all of the foregoing reasons, Defendant renews its request that the Court grant this Motion and enter summary judgment in its favor.

Dated: November 8, 2019            Respectfully submitted,

                                                  JESSIE K. LIU
                                                  D.C. Bar 472845
                                                  United States Attorney

DANIEL F. VAN HORN
D.C. Bar 924092
Chief, Civil Division

By:   */s/ Daniel P. Schaefer*
DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

*Counsel for Defendant*