UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS and NATIONAL WOMEN'S LAW CENTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>OFFICE OF MANAGEMENT AND BUDGET,<br><br>*Defendant*. | Civ. A. No. 18-0645 (EGS) |

## DEFENDANT'S SUPPLEMENTAL BRIEF

Defendant Office of Management and Budget ("Defendant," "OMB," or "Agency") respectfully files this Supplemental Brief in support of its Motion for Summary Judgment ("Motion") in this Freedom of Information Act ("FOIA") matter.

The Court's previous Memorandum Opinion in this matter stated, *inter alia*, that "neither party has briefed the Court on whether [the Agency's] affidavit together with the *Vaughn* index satisfies [its] burden to meet the foreseeable harm standard." Mem. Op., Nov. 24, 2020, at 11 (ECF No. 32) ("Mem. Op."). The Court denied in part without prejudice Defendant's Motion as to whether OMB properly invoked the deliberative process privilege. In a subsequent Minute Order dated December 30, 2020, the Court directed Defendant to "file a supplemental brief addressing the foreseeable harm standard, along with any supplemental evidence Defendant may wish to provide[.]"[1]

---

[1] The Court ordered Defendant to file its supplemental brief no later than January 27, 2021. On January 22, 2021, Defendant filed a consent motion to extend that deadline until February 17,

As explained in the Court's decision, to satisfy the foreseeable harm standard "'an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld.'" *Id.* at 9 (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105 (D.D.C. 2019)).

## I. The First Walsh Declaration and *Vaughn* Index Satisfied the Foreseeable Harm Standard.

First, the evidence in Ms. Walsh's first declaration ("First Walsh Declaration"), together with the *Vaughn* index, was sufficient to satisfy the Agency's foreseeable harm standard. *See* 1st Walsh Decl. ¶¶ 15-18, Sept. 18, 2019 (ECF No. 26-3). The First Walsh Declaration provided "context [and] insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107. On the specific decision-making processes or deliberations at issue, the Agency's declarant explained that the contested records:

> were all created as part of a decision-making process conducted among staff in OMB in consultation with other components of the Executive Office of the President and Executive Branch agencies pursuant to authority delegated to OMB by the Paperwork Reduction Act, 44 U.S.C. §§ 3501-3521, over the approval of collections of information by the federal government. In this case, the collection of information under consideration was the EEOC's pay-data collection for employers using the EEOC's EEO-1 form. In particular, the deliberations in the information being withheld concern the then pending decision by OMB on whether to issue a letter initiating a review and stay of the EEO-1 form.

1st Walsh Decl. ¶¶ 11-12. In addition, Paragraphs 15 to 18 of the First Walsh Declaration described how its deliberative process would be harmed by disclosure. The Agency was concerned that the compelled disclosure of the contested withholdings "would inhibit the frank

---

2021, because the undersigned had to prioritize an emergency matter also before this Court. As of this filing, the Court had not yet ruled on Defendant's enlargement motion.

and candid expression of views and the sharing of information that are essential for OMB to carry out its responsibilities, and would greatly impair the free exchange of information, ideas and analysis within OMB, and between OMB and other agencies in the Executive Branch." *Id.* ¶ 15. For a decision by OMB on whether to issue a letter initiating a review of the EEO-1 form, releasing the contested withholdings would inhibit future deliberations because staff at OMB and other Executive Branch agencies that developed the policy recommendations and participated in the deliberations depend upon the continued assurance of confidentiality. *Id.* ¶¶ 16-17. While the issue may not have been specifically addressed in Defendant's opening Memorandum or Reply, Defendant maintains that the First Walsh Declaration and Vaughn *Index* that the Agency provided with its opening Memorandum satisfied the Agency's burden on foreseeable harm.

**II.     The Third Walsh Declaration Offered in Support of This Supplemental Brief Further Satisfies the Foreseeable Harm Standard.**

In addition, Defendant offers in support of this Supplemental Brief a supplemental declaration from Ms. Walsh ("Third Walsh Declaration"), to further clarify and explain how release of the deliberative information in the contested records would foreseeably result in two broad types of harm. 3rd Decl. of Heather Walsh ¶ 1, Feb. 17, 2021 (Ex. 1 hereto); *see also Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 ("In some instances, the foreseeable-harm claims the defendants have already provided—once attached to a more detailed document description that includes, *inter alia*, the information the defendants must already provide to enable assessment of whether the deliberative process privilege was properly asserted in the first instance—may be enough."). First, compelled disclosure of the deliberative communications can be reasonably expected to chill candid discussions within OMB and among OMB and other Executive Branch agencies. *Id.* Second, releasing the Agency's deliberative communications

would cause public confusion about the Agency's motives for or reasoning of the final decision in question. *Id.*

A. **Foreseeable Harm to the Agency's Decision-Making Process.**

On the first point, the Agency determined that release of the deliberative communications in dispute here would chill candid discussion within OMB and with other Executive Branch agencies. *Id.* ¶ 6. The Third Walsh Declaration describes three phases of OMB's deliberation that preceded its policy decision in August 2017 to send a memorandum to the U.S. Equal Employment Opportunity Commission ("EEOC") issuing a review and immediate stay of part of its previous approval of the EEO-1 collection that the Agency had issued in September 2016. *Id.* ¶ 3. The first phase included high-level deliberations among Executive Branch officials whether to begin in earnest consideration of issuing a review-and-stay memorandum. *Id.* ¶¶ 7-10. The second phase involved coordination between the EEOC and OMB culminated on July 14, 2017, when the EEOC submitted a formal petition to OMB asking it to issue a stay of the EEO-1 collection. *Id.* ¶¶ 7, 11-14. The third and final phase that preceded the Agency's final policy decision in question here involved preparation and issuance of the review-and-stay memorandum. *Id.* ¶ 7, 15-16. It is well established in this Circuit that an agency may take this type of categorical approach in describing the specific harms to the deliberative process that would result from disclosure of deliberative communications. *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Commerce*, Civ. A. No. 17-1283 (EGS), 2020 WL 6939807, at *6 (D.D.C. Nov. 25, 2020).

For each phase of the Agency's deliberative process, Ms. Walsh further explains the basis for the Agency's reasonable belief that releasing these deliberative communications would cause staff at OMB and other Executive Branch agencies to be less willing to participate in ongoing and future deliberations about approval of information collections by OMB under the Paperwork

4

Reduction Act, which would harm the Agency's decision-making processes. *See Ctr. for Investigative Reporting v. Dep't of the Interior*, Civ. A. No. 18-1599 (DLF), 2020 WL 1695175, at *3 (D.D.C. Apr. 7, 2020) (for purposes of articulating both the nature of the harm and the link between the specified harm and specific information contained in the material withheld, the question is not whether the purported harms could occur, but whether "it is reasonably foreseeable" that they will occur).

Ms. Walsh provides specific and concrete examples of deliberative communications that the Agency withheld and explains in detail why the Agency determined that release of the information can be reasonably expected to cause Executive Branch officials to be less willing to participate in and share candid opinions in other similar deliberations and thus cause harm to the Agency's decision-making processes. *See, e.g.*, Third Walsh Decl. ¶ 9. As another member of this Court reasoned in a recent decision, "such chilling of candid advise is exactly what the privilege seeks to prevent." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (finding that agency properly withheld records and sufficiently explained why disclosure of the information at issue would have chilling effect on the agency's attorneys who would have no longer felt able to discuss ideas, strategies, and recommendations freely).

**B.     Foreseeable Harm That Would Result From Public Confusion.**

Moving to the second category of predicted harm, the Third Walsh Declaration further clarifies and explains why the Agency has reasonably determined that release of the deliberative communications would likely cause confusion among the public as to the reasoning of the underlying decision. *Id.* ¶¶ 17-19. It is well recognized that in addition to preserving frank discussions the deliberative process also protects against the risk of public confusion. *See Judicial Watch, Inc.*, 2020 WL 6939807, at *6-*7 (finding that agency satisfied its burden of articulating the foreseeable harm of disclosure; agency's declarant stated, *inter alia*, that it would

5

cause significant public confusion if draft talking points were released because the public would "incorrectly implicat[e] an agency change of posture, improperly suggesting deceit or concealment if draft topics [we]re ultimately not discussed with the press, or incorrectly implying disagreement on agency positions while the wording, posture, and topics [we]re still being formed"); *Ecological Rights Found. v. EPA*, Civ. A. No. 19-980 (BAH), 2021 WL 535725, at *33 (D.D.C. Feb. 13, 2021) (finding that agency sufficiently connected disclosure of withheld information in the disputed records to a foreseeable harm that included the risk of public confusion concerning the agency's final decision). Here, the Agency has sufficiently explained the basis for its reasonable determination that release of the deliberative communications – which include drafts of the document that would become the review and stay memorandum in the Agency's final decision and other deliberations among Executive Branch employees that informed the Agency's final decision – would confuse the public about the Agency's reasoning for the final decision. *See* 3rd Walsh Decl. ¶¶ 17-19.

### C. The Agency Has Sufficiently Connected Disclosure of the Withheld Information in These Specific Records to Foreseeable Harms.

On both points one and two summarized above, the discussion of foreseeable harm in the Third Walsh Declaration is far from the "boilerplate" or "general explanations" of harm that other courts have rejected. *See, e.g.*, *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (rejecting agency's claim of foreseeable harm that would have resulted from disclosure of records because every entry on the *Vaughn* index consisted of general explanations and similar boiler plate language); *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 99 (D.D.C. 2019) (agency's speculative declarations and *Vaughn* index failed to show how information it redacted would result in reasonably foreseeable harm to its deliberative process; the agency's evidence contained boiler plate language stating the release of the redacted material

6

could chill speech and could have an effect on interagency discussion, but there was no explanation as to *why* disclosure was likely to discourage frank and open dialogue as to the specific withholdings or categories of withholdings).

Instead, the Agency has provided factual context for both the decision-making process in question and the harms that would reasonably ensue from disclosure. Under this Circuit's precedent, the Agency's evidence satisfies the foreseeable harm standard. *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 (to satisfy foreseeable harm agency must provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure"); *Judicial Watch, Inc.*, 2020 WL 6939807, at *6 (finding agency's explanation sufficient to satisfy the foreseeable harm standard because "[t]he explanation . . . describes the specific harms to the deliberative process that would result from disclosure of the information"). Indeed, the Agency's evidence demonstrates that the above two foreseeable results, namely, the predictable harm to OMB's ongoing and future decision-making processes and the risk of public confusion, are "exactly what the privilege seeks to prevent." *See Machado Amadis*, 971 F.3d at 371; *Ecological Rights Found.*, 2021 WL 535725, at *33 (citation omitted) ("This explanation 'specifically connects disclosure of [the record] to a tangible chilling effect,' here among EPA staff when drafting options to resolve issues for senior officials' consideration, and a concrete risk of generating public confusion"); *Judicial Watch, Inc. v. Dep't of Justice*, Civ. A. No. 17-0832 (CKK), 2020 WL 5593930, at *5 (D.D.C. Sept. 18, 2020) (finding a similar level of detail sufficient).

For all of the foregoing reasons as well as those stated in Defendant's opening Memorandum and Reply in support of its Motion for Summary Judgment, Defendant renews its request that the Court enter summary judgment in its favor.

Dated: February 17, 2021        Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:  */s/ Daniel P. Schaefer*
DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

*Counsel for Defendant*