**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. OFFICE OF MANAGEMENT AND BUDGET,<br><br>    Defendant. |

Civ. Action No. 18-645
(EGS)

<u>**MEMORANDUM OPINION**</u>

## I.   Introduction

Plaintiffs the Lawyers' Committee for Civil Rights and the National Women's Law Center (collectively, "Plaintiffs") filed this action against the U.S. Office of Management and Budget ("OMB," "Defendant," or the "agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See generally* Compl., ECF No. 1.[1] Plaintiffs seek agency records regarding OMB's decision to halt its initiative for the collection of pay data from employers by the Equal Employment Opportunity Commission ("EEOC"). *See id.* ¶ 1.

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

On November 24, 2020, the Court denied in part without prejudice and held in abeyance in part OMB's Motion for Summary Judgment. *See Lawyers' Comm. for C.R. v. U.S. Off. of Mgmt. & Budget*, No. 18-CV-645 (EGS), 2020 WL 6887689, at *1 (D.D.C. Nov. 24, 2020). The Court also ordered the parties to submit supplemental briefing "addressing the foreseeable harm standard, along with any supplemental evidence Defendant may wish to provide." Minute Order (Dec. 30, 2020).

Upon careful consideration of OMB's motion, the opposition, and reply thereto, the supplemental briefing, the applicable law, and the entire record herein, the Court hereby **GRANTS** OMB's Motion for Summary Judgment, *see* ECF No. 26.

## II.  Background

### A. Factual

On September 20, 2017, Plaintiffs submitted five FOIA requests to OMB to obtain information about an order issued by OMB's Office of Information and Regulatory Affairs under the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, to initiate an indefinite stay and review of the EEOC's collection of pay data through its updated EEO-1 form. *See* Pls.' Counter-Statement of Material Facts as to Which There is No Genuine Issue ("SOMF"), ECF No. 29-1 ¶¶ 1-2. OMB has since disclosed 42 documents with redactions and withheld 23 documents in full. *See* Ex. G—OMB's Revised Vaughn List, Reply Ex. 1 ("Vaughn Index"),

ECF No. 30-1 at 127-46. The agency justifies its withholding of this information under FOIA Exemption 5 and the deliberative process privilege. *See* SOMF, ECF No. 29-1 ¶ 3.

**B. Procedural**

On September 18, 2019, OMB filed its Motion for Summary Judgment. *See* Def.'s Mot. Summ. J., ECF No. 26; Mem. P. & A. in Supp. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 26-1. Plaintiffs filed a brief in opposition on October 25, 2019, *see* Pls.' Mem. P. & A. in Opp'n Def.'s Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 29; and OMB submitted a reply brief on November 8, 2019, *see* Reply in Supp. Def.'s Mot. Summ. J. ("Def.'s Reply"), ECF No. 30.

The Court issued a Memorandum Opinion on November 24, 2020, denying the motion in part on the issue of whether OMB properly invoked the deliberative process privilege and holding the motion in abeyance in part on the issue of whether OMB released all reasonably segregable information. *See Lawyers' Comm.*, 2020 WL 6887689, at *4. The Court thereafter ordered OMB to file supplemental briefing "addressing the foreseeable harm standard, along with any supplemental evidence Defendant may wish to provide." Minute Order (Dec. 30, 2020).

OMB filed its supplemental brief on February 17, 2021, *see* Def.'s Suppl. Br., ECF No. 36, and a new declaration from Heather V. Walsh ("Ms. Walsh"), Deputy General Counsel in OMB's

Office of the General Counsel ("OGC"), *see* Third Decl. of
Heather V. Walsh ("Third Walsh Decl."), ECF No. 36-1. On March
10, 2021, Plaintiffs submitted an opposition brief, *see* Pls.'
Suppl. Br., ECF No. 37; and OMB replied on March 24, 2021, *see*
Reply in Supp. Def.'s Suppl. Br., ECF No. 38. The motion is now
ripe and ready for adjudication.

## III. Legal Standard

### A. FOIA

FOIA cases are typically and appropriately decided on
motions for summary judgment. *Gold Anti-Tr. Action Comm., Inc.
v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 130
(D.D.C. 2011) (citation and internal quotation marks omitted).
Summary judgment is warranted "if the movant shows [by affidavit
or other admissible evidence] that there is no genuine dispute
as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a
summary judgment motion must show that a genuine factual issue
exists by "(A) citing to particular parts of materials in the
record . . . or (B) showing that the materials cited do not
establish the absence . . . of a genuine dispute." Fed. R. Civ.
P. 56(c). Any factual assertions in the moving party's
affidavits will be accepted as true unless the opposing party
submits his own affidavits or other documentary evidence
contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453,

456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (per curiam) (citation and internal citation marks omitted). In reviewing a summary judgment motion in the FOIA context, the court must conduct a *de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B); but may rely on agency declarations, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory . . . are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (citation and internal quotation marks omitted). "The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed

5

exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Sierra Club v. U.S. Fish & Wildlife Serv.*, 523 F. Supp. 3d 24, 31-32 (D.D.C. 2021) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

**B. FOIA Exemptions**

Congress enacted FOIA to "'open up the workings of government to public scrutiny through the disclosure of government records.'" *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 97 (D.D.C. 2019) (quoting *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984)). Although the legislation is aimed toward "open[ness] . . . of government," *id.*; Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citation and internal quotation marks omitted). As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(b)(1)-(9). However, "[b]ecause FOIA establishes a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the nine exemptions carved out in the Act." *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citations omitted).

"The agency bears the burden of justifying any withholding." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). "To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn index,' sufficiently detailed affidavits or declarations, or both." *Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009) (citations omitted). Although there is no set formula for a Vaughn index, the agency must "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation and internal quotation marks omitted).

## IV. Analysis

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). A document will fall under Exemption 5 if it meets two conditions: "'its source must be a Government agency, and it must fall within the ambit of a

privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stolt–Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Accordingly, this exemption incorporates various common-law privileges, including the deliberative process privilege. *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005) (quoting *Bureau of Nat'l Affs. v. Dep't of Just.*, 742 F.2d 1484, 1496 (D.C. Cir. 1984)).

   To assert the privilege, the agency must establish that the document at issue is both "predecisional and deliberative." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). A document is predecisional if it was "generated before the agency's final decision on the matter" and deliberative if it was "prepared to help the agency formulate its position." *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021)). The deliberative process privilege "should be construed 'as narrowly as consistent with efficient Government operation.'" *Tax'n With Representation Fund v. I.R.S.*, 646 F.2d 666, 677 (D.C. Cir. 1981) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).

The FOIA Improvement Act ("FIA"), Pub. L. No. 114-185, 130 Stat. 538 (2016), imposes an additional requirement on agencies seeking to invoke this or any other FOIA exemption. In relevant part, the FIA provides that: "An agency shall . . . withhold information under this section only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). In other words, "an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018), *on reconsideration in part*, 442 F. Supp. 3d 240 (D.D.C. 2020).

Here, OMB has invoked the deliberative process privilege to withhold 23 documents in full and 42 documents in part. There is no dispute that the withheld information is predecisional. *See* SOMF, ECF No. 29-1 ¶ 7. The Court agrees with this assessment because the documents are "antecedent" to OMB's decision to issue the review-and-stay memorandum. *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 259 (D.D.C. 2004) (citation omitted); *see* SOMF, ECF No. 29-1 ¶ 7 ("[A]ll of the information withheld predated OMB's final decision on August 29, 2017.").

9

Three issues remain in this litigation: (1) whether the documents at issue are deliberative; (2) whether OMB has satisfied the foreseeable harm standard; and (3) whether OMB has released all reasonably segregable information. For the reasons listed below, the Court determines that the withholdings are deliberative; OMB has satisfied the foreseeable harm standard; and OMB has met its segregability obligations.

### A. The Documents OMB Withheld Are Deliberative

"[A] 'deliberative' document is one that is 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" *Jud. Watch*, 297 F. Supp. 2d at 259 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975)). More specifically, "[o]nly those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) (citing *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

OMB uses its *Vaughn* index, declarations, and briefing to show that the withheld documents are deliberative. *See generally* Def.'s Mot., ECF No. 26-1; Def.'s Reply, ECF No. 30; First Walsh Decl., ECF No. 26-3, Second Walsh Decl., ECF No. 30-1; Vaughn Index, ECF No. 30-1 at 127-46. The Court properly considers all of these materials to determine whether the agency has met its

burden. *See Jud. Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 146 (D.C. Cir. 2006) ("Any measure will adequately aid a court if it 'provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply.'" (quoting *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977))).

Plaintiffs challenge application of the deliberative process privilege to: (1) all of OMB's withholdings generally; and (2) nine withheld documents in particular. *See* Pls.' Opp'n, ECF No. 29 at 15-19. The Court addresses each issue in turn.

### 1. The Withheld Documents Generally

Plaintiffs contend that OMB cannot invoke the deliberative process privilege to withhold any responsive records because they claim that the agency has produced insufficient evidence to support the privilege. *See id.* at 16-19. First, they argue that the *Vaughn* index is inadequate because OMB "repeats th[e] exact same explanation" for the majority of its entries. *Id.* at 17-18. The *Vaughn* index gives document-specific descriptions for all documents withheld pursuant to the deliberative process privilege. *See* Vaughn Index, ECF No. 30-1 at 127-46. The index includes ten categories of information: (1) the index entry number; (2) the FOIA request tracking number; (3) the document

ID; (4) the production label range; (5) the document title (or subject line, in the case of email communications); (6) the sender (for email communications); (7) the recipient(s) (for email communications); (8) the total number of pages; (9) the production status (that is, whether entirely or partially withheld); and (10) the reason(s) for the withholding. *See id.*

Although there are 87[2] entries in the index, OMB lists one of only three distinct reasons for the withholding for each entry:

- The withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion;

- The withheld document consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion, and no factual information could be segregated and released without revealing deliberative information;

- Withheld draft documents in the process of revision that do not reflect final agency decisions but are part of a decisionmaking process regarding OMB's decision whether to issue a review and stay of the EEOC's pay data collection.

---

[2] The original Vaughn index contained 87 entries but removed 22 entries in its reply briefing. *See* Second Walsh Decl., ECF No. 30-1 ¶¶ 15-16.

*Id.* As OMB explains in its reply brief, *see* Def.'s Reply, ECF No. 30 at 7; a *Vaughn* index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category, *see Landmark Legal Found. v. I.R.S.*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) ("It is not the agency's fault that thousands of documents belonged in the same category, thus leading to exhaustive repetition."). Here, OMB has appropriately grouped its withholdings into two categories: (1) inter-agency or intra-agency email communications; and (2) draft documents. Def's Mot., ECF No. 26 at 13. OMB justifies its withholdings in each category with one of the three explanations listed above. *See generally* Vaughn Index, ECF No. 30-1 at 127-46. The Court concludes that this approach is adequate to establish that the withheld documents are deliberative.

Second, Plaintiffs argue that OMB's evidence is inadequate because its assertions are conclusory. *See* Pls.' Opp'n, ECF No. 29 at 17-18. Plaintiffs are correct that "conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). FOIA permits withholding only if the agency shows that the document "reflect[s] the give and take of the deliberative process." *Pub.*

*Citizen*, 598 F.3d at 876. OMB therefore must establish two elements: (1) "what deliberative process is involved"; and (2) "the role played by the documents in issue in the course of that process." *Senate of P.R. v. U.S. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States Gas Corp.*, 617 F.2d at 868).

OMB identifies the deliberative process involved for all its withholdings: "a decision-making process conducted among staff in OMB or in consultation with other components of the Executive Office of the President and Executive Branch agencies pursuant to authority delegated to OMB by the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521, over the approval of collection of information by the federal government" in service of "OMB's then-pending decision by OMB on whether to issue a letter initiating a review and stay of the EEO-1 form." Def.'s Mot., ECF No. 26-1 at 13. This aligns with OMB's statements in its *Vaughn* index and declarations, *see* First Walsh Decl., ECF No. 26-3; Second Walsh Decl., ECF No. 30-1; Vaughn Index, ECF No. 30-1 at 127–46; and satisfies the first step of the inquiry.

Plaintiffs argue that OMB's argument fails at the second step, claiming that the agency "made no attempt to explain what role each of these documents played in the deliberative process." Pls.' Opp'n, ECF No. 29 at 18. The Court reviews OMB's justifications by category of withholding.

The first category of withholdings consists of inter-agency or intra-agency email communications that OMB withheld in part. OMB describes the role these emails played in the deliberative process as "deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff at the time of the discussion." Vaughn Index, ECF No. 30-1 at 127-46; Def.'s Reply, ECF No. 30 at 9. The agency has also produced the date, subject line, sender(s), and recipient(s) of each email, thereby providing specific contextual information about each email. *See* Vaughn Index, ECF No. 30-1 at 127-46.

Plaintiffs argue that OMB has insufficiently explained the role these email communications played in the deliberative process. *See* Pls.' Opp'n, ECF No. 29 at 18. OMB responds that it "cannot be any more specific about the content of the email[s] and attachments without revealing privileged information the withholding of which is the very issue in the litigation." Def.'s Reply, ECF No. 30 at 9 (citing *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. USCBP*, Civ. A. No. 04-0377 (JDB), 2005 WL 3274073, at *4 (D.D.C. Sept. 22, 2005)). The Court agrees with OMB. FOIA imposes a "difficult obligation" on an agency "to justify its actions without compromising its

15

original withholdings by disclosing too much information." *Jud.
Watch, Inc.*, 449 F.3d at 146. Courts therefore require that
"[t]he description and explanation the agency offers . . .
reveal as much detail as possible as to the nature of the
document, without actually disclosing information that deserves
protection." *Oglesby*, 79 F.3d at 1176. Here, the briefing and
declarations, along with the copies of the redacted emails at
issue, "adequately demonstrate that the documents constituted
candid [discussion] about whether and how" OMB should issue a
review-and-stay memorandum. *Reps. Comm. for Freedom of the Press
v. Fed. Bureau of Investigation*, 3 F.4th 350, 368 (D.C. Cir.
2021) (citing *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir.
2007)). The Court concludes that OMB has supplied sufficient
detail to justify the deliberative role of these email
communications. *Compare* ECF No. 26-3, *and* ECF No. 30-1, *with
Senate of P.R.*, 823 F.2d at 585-86 ("The information provided by
the DOJ—consisting almost entirely of each document's issue
date, its author and intended recipient, and the briefest of
references to its subject matter—will not do.").

The second category of withholdings consists of draft
documents that OMB withheld in full. In the *Vaughn* index, OMB
explains the role these documents played in the deliberative
process as "draft[s] in the process of revision that do not
reflect final agency decisions but are part of a decisionmaking

16

process regarding OMB's decision whether to issue a review and stay of the EEOC's pay data collection." Vaughn Index, ECF No. 30-1 at 127-46; Def.'s Reply, ECF No. 30 at 10. In its briefing and declarations, the agency further clarifies that these draft documents played two roles in the deliberative process: (1) the drafts "were 'part of both a decisionmaking process regarding the final composition of such documents'"; and (2) the drafts "were 'part of . . . the larger decisionmaking process regarding OMB's decision whether to issue a review and stay of the EEOC's pay data collection.'" Def.'s Reply, ECF No. 30 at 10 (quoting First Walsh Decl., ECF No. 26-3 ¶ 14).

Plaintiffs again claim that OMB has not adequately explained the role these documents played in the deliberative process. *See* Pls.' Opp'n, ECF No. 29 at 18. Indeed, "an agency cannot withhold the material merely by stating that it is in a draft document." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987). Nonetheless, the Court concludes that OMB has met its burden. The agency states that these drafts "do not reflect final agency decisions" but are instead draft versions of the then-pending decision to issue a review-and-stay memorandum. Vaughn Index, ECF No. 30-1 at 127-46; Def.'s Reply, ECF No. 30 at 10. "Proposed drafts of a non-final agency decision that are still undergoing review, debate, and editing are the type of deliberative work in progress that

17

falls at the core of the deliberative process privilege." *Reps.*
*Comm. for Freedom of the Press*, 3 F.4th at 364-65 (citing *U.S.*
*Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786
(2021)).

### 2. The Nine Documents Plaintiffs Specifically Challenge

In addition to challenging the adequacy of OMB's evidence,
*see* Pls.' Opp'n, ECF No. 29 at 16-19; Plaintiffs also contest
the withholding of nine documents in particular:

> *Vaughn* Index Entry 15: "EEO-1 Outline.docx"
> Document;
>
> *Vaughn* Index Entries 19-22: "EEO-1/Memo for
> OIRA" Email and Attachments "Attach1USC,"
> "Attach2EEAC," and "EEO-1 Memo Rao
> 07.2017.docx";
>
> *Vaughn* Index Entry 40: "Call or meet next
> week" Email;
>
> *Vaughn* Index Entry 76: "2017-06-23 -
> Memorandum re Equal Pay_.docx" Document;
>
> *Vaughn* Index Entry 77: "EPA Affirmative
> Defense Memo (June 23 2017)" Document;
>
> *Vaughn* Index Entry 83: "Background Memo on
> EEO-1 rt jn.docx" Document.

*Id.* at 15-16 (citing App. A – Vaughn Index, Ex. A, ECF No. 26-3
at 53, 54-55, 60, 69, 71). Plaintiffs do not raise any new
arguments as to these withholdings. *See generally* Pls.' Opp'n,
ECF No. 29. The Court briefly considers each document below.

### a. *Vaughn* Index Entry 15: "EEO-1 Outline" Document

OMB maintains that this document is deliberative because "[t]he withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion." Vaughn Index, ECF No. 30-1 at 131. The agency has also provided some contextual information: the EEO-1 Outline was an attachment to an email dated May 1, 2017, from EEOC Chief of Staff and Senior Counsel Jim Paretti, Jr. to Deputy and Acting Administrator of OMB's Office of Information and Regulatory Affairs Dominic Mancini. *See* Second Walsh Decl., ECF No. 30-1 ¶ 3. In the email, Mr. Paretti explains that the outline is of a presentation by the EEOC's Acting Chair. *Id.* Further, the production shows that the EEO-1 Outline was forwarded to other OMB employees. *See id.* The Court concludes that OMB has provided reasonably specific detail as to the role this outline played in the deliberative process. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 368.

### b. *Vaughn* Index Entries 19-22: "EEO-1/Memo for OIRA" Email and Attachments "Attach1USC," Attach2EEAC," and "EEO-1 Memo Rao 07.2017.docx"

These records include: (1) an email from the EEOC Chief of Staff to the Deputy and Acting Administrator of OMB's Office of Information and Regulatory Affairs on July 14, 2017; and (2)

19

three documents attached to that email. *See* Second Walsh Decl., ECF No. 30-1 ¶ 4. OMB withheld all four records in full and states that these documents can be withheld because they "consist[] of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion." Vaughn Index, ECF No. 30-1 at 131-32. This description, in combination with the subject line, sender, and recipient of the email, provides a reasonably specific explanation as to the role these documents played in the deliberative process. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 368.

Plaintiffs also suggest that Attach1USC and Attach2EEAC cannot be protected from disclosure by the deliberative process privilege because they refer to and "presumably discuss or contain information from" two non-governmental organizations: the United States Chamber of Commerce and the Equal Employment Advisory Council. Pls.' Opp'n, ECF No. 29 at 19. OMB responds that "Plaintiff's speculation about what the documents might contain does not overcome the presumption of good faith accorded to the Agency's declaration." Def.'s Reply, ECF No. 30 at 16. OMB also points out that this objection does not bear on whether the documents are deliberative in nature. *See id.* The Court agrees with OMB. The Agency has averred that none of the

information withheld under Exemption 5 was shared with anyone outside the Executive Branch. First Walsh Decl., ECF No. 26-3 ¶ 9. And it has explained how these documents fit within the scope of the deliberative process privilege because, as stated in the *Vaughn* index, the "withheld/redacted information consists of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among OMB staff at the time of the discussion." Vaughn Index, ECF No. 30-1 at 132. This explanation provides adequate detail to establish the role the records played in the deliberative process. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 368.

### c. *Vaughn* Index Entry 40: "Call or Meet Next Week" Email

This record consists of a series of emails between the EEOC Acting Chair and the Chief of Staff for Ivanka Trump, then Advisor to the President. *See* Second Walsh Decl., ECF No. 30-1 ¶ 5. OMB states that it may withhold parts of these email communications because they "consist[] of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion." Vaughn Index, ECF No. 30-1 at 136.

The agency also produced portions of these emails, including non-deliberative email text. *See* Ex. C, ECF No. 30-1 at 14-21. Thus, Ms. Walsh's explanation, considered with the information OMB produced for each email in this record, provides a reasonably specific explanation as to the role these documents played in the deliberative process. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 368.

> **d. *Vaughn* Index Entry No. 76: "2017-06-23 Memorandum re Equal Pay___.docx" Document; *Vaughn* Index Entry No. 77: "EPA Affirmative Defense Memo (June 23 2017).docx" Document; *Vaughn* Index Entry No. 83: "Background Memo on EEO-1rt jn.docx" Document**

OMB withheld in full "2017-06-23 Memorandum re Equal Pay_.docx" and "EPA Affirmative Defense Memo (June 23 2017).docx," and withheld in part "Background Memo on EEO-1rt jn.docx." *See* Second Walsh Decl., ECF No. 30-1 ¶¶ 6-8; First Walsh Decl., ECF No. 26-3 ¶ 20. The agency justifies all three documents as deliberative because they "consist[] of deliberations internal to the Executive Branch regarding OMB's then-pending decision whether to issue a review and stay of the EEOC's pay data collection that was under consideration among staff of OMB at the time of the discussion." Vaughn Index, ECF No. 30-1 at 143-45. OMB also states that these documents consist of "discussion[s] involving economic, legal, and policy issues in which the facts are inextricably intertwined with deliberative discussion, opinions, and policy recommendations."

Second Walsh Decl., ECF No. 30-1 ¶¶ 6-8. This explanation and the titles of the documents provide adequate detail to establish the role the records played in the deliberative process. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 368.

Accordingly, the Court concludes that all of OMB's withholdings are deliberative in nature.

### B. OMB Has Satisfied the Foreseeable Harm Standard

To invoke the deliberative process privilege, OMB must also satisfy the foreseeable harm standard set forth in the FIA. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 361. Under this standard, "[a]n agency shall . . . withhold information under this section only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). Congress imposed this additional requirement on agencies "to foreclose the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369 (citation and internal quotation marks omitted). This is a "heightened standard for an agency's withholdings under Exemption 5," *Jud. Watch, Inc.*, 375 F. Supp. 3d at 100; and it constitutes "an independent and meaningful burden," *Ctr. for Investigative*

*Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (quoting *NRDC v. EPA*, No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019)).

The parties did not specifically address the foreseeable harm standard in their initial briefing, and so the Court ordered supplemental briefing on the issue. *See* Minute Order (Dec. 30, 2020). To meet its burden, OMB groups the documents and discusses the specific foreseeable harms of disclosure on a category-by-category basis. *See* Def.'s Suppl. Br., ECF No. 36 at 4. These groups correspond with the three phases of deliberation preceding the agency's August 2017 review-and-stay memorandum: (1) "high-level deliberations among Executive Branch officials whether to begin in earnest consideration of issuing a review-and-stay memorandum"; (2) "coordination between the EEOC and OMB culminat[ing] on July 14, 2017, when the EEOC submitted a formal petition to OMB asking it to issue a stay of the EEO-1 collection"; and (3) "preparation and issuance of the review-and-stay memorandum." *Id.* As Plaintiffs concede, *see* Pls.' Suppl. Br., ECF No. 37 at 3; this "categorical approach" is permissible.

OMB next identifies two harms that are foreseeable if the withheld documents are disclosed. *See* Def.'s Suppl. Br., ECF No. 36 at 3-6. The Court discusses each harm in turn.

First, the agency argues that disclosure "can be reasonably expected to chill candid discussions within OMB and among OMB and other Executive Branch agencies." *Id.* at 3. Ms. Walsh, OMB's declarant, articulates the link between this harm and each category of withheld documents in a third declaration. *See* Third Walsh Decl., ECF No. 36-1. As to the first category, Ms. Walsh draws a direct link between agency staff's "awareness of, and confidence in," the deliberative process privilege and their "willingness . . . to offer immediate impressions and contrary arguments about matters before the government." *Id.* ¶ 8. She then points to the specific documents to clarify her point. She states that *Vaughn* index entries 1-7, 47, 53-54, 73-74, 83, and 85 "contain strategic advice about initiating a deliberation" and "arguments regarding particular policy outcomes," the release of which would expose the substance and procedure of "early, high-level decisionmaking . . . to public scrutiny." *Id.* ¶ 9. She also states that *Vaughn* index entries 14, 15, 34, 35, 37, 38, 62, 63, 75, 78, and 84 involve "the creation and editing of broadly deliberative materials to be shared in a March 2, 2017, meeting, in which the Executive Branch decided to begin in earnest the consideration of issuing a review-and-stay memorandum," the release of which would expose details about the drafting process and meeting deliberations. *Id.* ¶ 10. For all documents, Ms. Walsh explains that disclosure "would prompt OMB

staff to be less candid" or perhaps not meaningfully participate in the deliberative process, which in turn would "seriously harm[] OMB's ability to function." *Id.*

As to the second category, Ms. Walsh states that disclosure of these inter-agency communications would inhibit OMB's ability to have frank and open discussions on policy matters with other parts of the Executive Branch. *See id.* ¶¶ 11-14. She explains that OMB staff make communications like the ones at issue here "[o]n a daily basis" and that OMB policy officials rely on these communications to inform decision makers. *Id.* ¶ 11. Ms. Walsh again describes the link between the harm and the specific documents in this category. She states that release of *Vaughn* index entries 17-21, 53-54, and 73-74—documents that contain the EEOC's legal analysis—would cause other Executive Branch agencies to "hesitate to provide or self-censor their communications to OMB out of concern that the views they offered would face public scrutiny," "result[ing] in fewer options being considered and fewer views being heard on a whole spectrum of deliberations before OMB." *Id.* ¶ 12. *Vaughn* index entries 22, 23 76, and 77 consist of inquiries and advice following a May 2, 2020 meeting about the opinions of various officials, and their release, Ms. Walsh states, "would foreseeably inhibit similar officials from being candid with OMB in the future." *Id.* ¶ 13. She makes the same statement regarding *Vaughn* index entries 40-

42 and 69, which contain substantive discussions between EEOC
and OMB officials about particular decision outcomes. *See id.* ¶
14. In sum, the agency maintains that disclosure of these
documents "would seriously hamper" OMB's ability "to coordinate
among the Departments and agencies," which is "the lifeblood of
OMB's unique role in the Federal Government." *Id.* ¶¶ 11, 14.

Ms. Walsh states that disclosure of the third category of
withholdings "would lead OMB staff to withhold their candid
opinions concerning these types of decisions" because these
documents reveal "the initiation, timing, scope, participants,
drafting, and publication of decisions." *Id.* ¶ 15. Specifically,
*Vaughn* index entries 43, 48-52, 60-61, 64-66, 70, and 72 are
unfinished drafts whose disclosure would expose "the changes
that were suggested by specific staff[] and . . . the drafting
process as a whole, which would likely diminish the candor that
drafters would incorporate into their comments." *Id.* ¶ 16.

Plaintiffs concede, as they must, that chilling candid
discussions within OMB and with OMB and other Executive Branch
agencies is the type of harm that the deliberative process
privilege is meant to prevent. Pls.' Suppl. Br., ECF No. 37 at
3-4; *Machado Amadis*, 971 F.3d at 371. They instead argue that
Ms. Walsh's explanation of the link between this harm and the
specific information withheld "sweep[s] too broadly." Pls.'
Suppl. Br., ECF No. 37 at 4. They contend that OMB has made "a

blanket refusal to genuinely engage in the exercise of determining whether particular material can be released without harm" and of "taking the position that no substantive information regarding its decisions . . . can ever be released." *Id.* at 5 (emphasis omitted).

The Court is unpersuaded by Plaintiffs' argument and concludes that OMB has adequately linked the harm to OMB's inter-agency and intra-agency discussions to the specific information withheld here. In its declaration, OMB has explained the content of each category of withholding and the specific harm that would result from the release of that information. *See Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 486 F. Supp. 3d 317, 337 (D.D.C. 2020). Contrary to Plaintiffs' position, the agency "did not present generic, across-the-board articulations of harm . . . as to a broad range of document types." *Id.* (citation and internal quotation marks omitted). It instead specifically addressed the information it withheld in each category and explained why disclosure would harm future inter-agency and intra-agency discussions. *See* Third Walsh Decl., ECF No. 36-1. Accordingly, OMB "correctly understood the governing legal requirement and reasonably explained why it was met here." *Machado Amadis*, 971 F.3d at 371.

OMB also asserts a second harm: that "releasing [its] deliberative communications would cause public confusion about

28

[its] motives for or reasoning of the final decision in question." Def.'s Suppl. Br., ECF No. 36 at 3-4. Although the briefing seems to suggest that this harm would result from disclosure of any withheld document, *see generally id.* at 3-7; Ms. Walsh explains how public confusion would ensue from disclosure of only the third category of withholdings, *see* Third Walsh Decl., ECF No. 36-1. She states that release of the draft documents in *Vaughn* index entries 43, 48-52, 60-61, 64-66, 70, and 72 would cause public confusion because those documents contain arguments for and against certain text as well as changes, comments, and edits. *Id.* ¶ 18. Revealing this information, she continues, "would be likely to create incorrect impressions in the public about the intentions behind this record" and would "decreas[e] the certainty the public would have in interpreting it." *Id.* She also states that disclosure of *Vaughn* entries 48-51 and 70, which are "clean" drafts without any visible edits, comments, or "draft" labels, "could . . . diminish[] the public's certainty in the veracity of records purporting to be OMB's actual policy document." *Id.* ¶ 19.

Plaintiffs concede that public confusion is another type of harm that the deliberative process privilege is meant to prevent. Pls.' Suppl. Br., ECF No. 37 at 3-4. They contend, however, that here, disclosure would not cause confusion but instead "would provide insight into how the Agency made a

decision, which would clear up confusion, to the extent any exists." *Id.* at 5. Plaintiffs also dispute Ms. Walsh's argument as to *Vaughn* entries 48-51 and 70 in particular, stating that OMB could redact text and append a "draft" label to prevent public confusion. *See id.*

The Court concludes that this second harm is also reasonably foreseeable from disclosure of the withholdings. As the parties agree, the deliberative process privilege is intended to protect against "confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp.*, 617 F.2d at 866. The Court concludes that OMB has explained how release of the documents in the third category of withholdings would cause this harm. The declaration "goes beyond the merely formulaic and boilerplate" language that courts regularly reject. *Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34, 51 (D.D.C. 2021).

Plaintiffs contend that permitting these withholdings "is inconsistent with the aims of both FOIA and the FIA." Pls.' Suppl. Br., ECF No. 37 at 5. The Court disagrees. FOIA establishes a presumption of openness, *Jud. Watch, Inc.*, 375 F. Supp. 3d at 100; but an agency may overcome that presumption through its supporting affidavits or declarations, *see*

*Rosenberg*, 342 F. Supp. 3d at 75. Further, the FIA "was intended to restrict agencies' discretion in withholding documents under FOIA," *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106; not to eliminate agencies' use of the FOIA exemptions altogether. As explained *supra*, OMB addressed the documents at issue and reasonably explained why its withholdings are appropriate under the FIA. *See Machado Amadis*, 971 F.3d at 371.

Accordingly, the Court concludes that it is reasonably foreseeable that specific harms will result from disclosure of the withheld documents.

### C. OMB Has Established That It Produced All Reasonably Segregable Information

"The focus of the FOIA is information, not documents." *Mead Data Cent., Inc.*, 566 F.2d at 260. Therefore, "even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'" *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)). As relevant here, under Exemption 5, an agency may withhold "[o]nly those portions of a predecisional document that reflect the give and take of the deliberative process" and "must disclose those portions of predecisional and deliberative documents that

31

contain factual information that does not inevitably reveal the government's deliberations." *Pub. Citizen*, 598 F.3d at 876 (citations and internal quotation marks omitted).

The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation and internal quotation marks omitted). The Court has an "affirmative duty" to ensure that the agency satisfies its segregability obligations. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the FOIA requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007).

Here, OMB argues that it "carefully assessed whether any factual or otherwise nonexempt information could be segregated and disclosed" and "determined that all nonexempt segregable information has been released." Def.'s Mot., ECF No. 26 at 15 (quoting First Walsh Decl., ECF No. 26-3 ¶ 19). The agency states that it cannot release any nonexempt information from the records it withheld in full because those "facts are inextricably intertwined with deliberative discussion, opinions,

and policy recommendations." *Id.* (quoting First Walsh Decl., ECF No. 26-3 ¶ 20).

Plaintiffs argue that OMB failed to produce segregable information, pointing out that "[e]ven where documents are subject to the deliberative process privilege, an agency must release 'those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations.'" Pls.' Opp'n, ECF No. 29 at 19 (quoting *Pub. Citizen*, 598 F.3d at 876). Plaintiffs argue that the nature OMB's decision "should have involved a consideration of the factual matters required by the applicable rules," concluding that the documents "likely contain factual material and that material should be disclosed." *Id.* For example, Plaintiffs point out that "[t]he decision OMB faced when considering staying the EEO-1 collection of pay data required a straightforward statement of the [relevant] facts," but that OMB did not produce a single document regarding the facts that would have justified staying the EEO-1 collection of pay data. *Id.* at 20. Plaintiffs conclude that the relevant declaration is "little more than conclusory and boilerplate" language that merely "repeat[s] the legal standard" and "offer[s] no meaningful basis" to conclude that OMB met its segregability obligations and therefore OMB failed to meet its burden. *Id.* at 20-21.

In reply, OMB argues that any facts it withheld are
inextricably intertwined with deliberative discussion, opinions,
and policy recommendations, noting that "[i]n some contexts, the
release of factual information does not expose the deliberations
or opinions of agency personnel, but that is not the case here."
Def.'s Reply, ECF No. 30 at 5-6. OMB argues that the facts it
gathered and considered in its review would reveal the nature of
the deliberations here because "[a] simple bright line between
factual and deliberative material cannot be easily drawn in a
case such as this in which the facts themselves reflect the
Agency's deliberative process." *Id*. at 6.

The Court concludes that OMB has satisfied its
segregability obligations. The Court rejects Plaintiffs'
argument that "the Walsh declaration fails to establish that
none of the withheld information could be segregated and
produced," Pls.' Opp'n, ECF No. 29 at 23; because the Walsh
declaration explains that here, the "facts are inextricably
intertwined with deliberative discussion, opinions, and policy
recommendations, such that disclosing any facts, and how they
are presented, would reveal the thought processes of OMB during
deliberations. Thus, I have determined that disclosure of such
factual material would reveal the nature and substance of the
agency deliberations." Walsh Decl., ECF No. 26-3 ¶ 20. And the
Court disagrees that OMB's justifications for withholding

34

factual information "are simply not credible," Pls.' Opp'n, ECF No. 29 at 23; because OMB has explained that here, "the facts themselves reflect the Agency's deliberative process." Def.'s Reply, ECF No. 30 at 6. For these reasons, OMB has demonstrated that disclosure of the factual information would inevitably reveal the government's deliberations. See *Pub. Citizen*, 598 F.3d at 876 (agencies "must disclose those portions of predecisional and deliberative documents that contain factual information that do[] not inevitably reveal the government's deliberations") (citations and internal quotation marks omitted).

## V.  Conclusion

For the foregoing reasons, the Court **GRANTS** OMB's Motion for Summary Judgment, *see* ECF No. 26.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **May 12, 2023**